UNITED STATES *ex rel.* MILLER *v.* RAUM.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1572. Submitted April 7, 1890.—Decided April 21, 1890.

When the Commissioner of Pensions, in executing an instruction from the Secretary of the Interior to increase a pension, gives a construction to a statute which had not been construed by the Secretary, but which had been left open to the commissioner to construe, mandamus does not lie to compel the commissioner to give a different construction to it.

THE case is stated in the opinion.

*Mr. J. G. Bigelow* for the plaintiff in error.

*Mr. Assistant Attorney General Maury* for the defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The relator, Charles R. Miller, applied for a peremptory mandamus against the respondent, Green B. Raum, Commissioner of Pensions, to command him to reissue the relator's pension certificate, with the rates of $25 per month from June 6, 1866; $31.25 per month from June 4, 1872; $50 per month from June 4, 1874; and $72 per month from June 17, 1878; and to allow him the monthly difference between these sums and what had been allowed him. From the statements of the petition, it appears that the sums heretofore allowed to the relator by way of pension have been $8 per month from the date of his discharge from military service, August 27, 1865; $15 per month from June 6, 1866; $18 per month from June 4, 1872; $24 per month from November 23, 1881; $30 per month from March 3, 1883; and $50 per month from January 14, 1885.

The injuries of which the relator complains are anchylosis, or rigidity, of the spinal column, and of the left leg, resulting from wounds received in the service, and making him nearly helpless, so as to require, as he alleges, the regular personal aid and attendance of another person.

After repeated applications for an increase of his pension, in which he succeeded in getting only $30 per month from March 3, 1883, under the act of that date, he finally appealed from the Commissioner of Pensions to the Secretary of the Interior, who rendered a decision on the 6th of February, 1885, directed to the commissioner, and declaring, amongst other things, that "the pensioner is greatly disabled; and it is evident from the papers in his case that he is utterly unable to do any manual labor, and is therefore entitled to $30 per month under the act of March 3, 1883, which has been allowed him by your office." On a reconsideration of the case, a further decision was made on the 12th of February, 1885, in which the secretary said:

"Since the departmental decision above referred to the papers in the claim have been carefully reconsidered by the Department and a personal examination of the pensioner

made, and it satisfactorily appears that he is unable to put on his shoe and stocking on the foot of the injured leg for the reason that the 'nearest point that can be reached by hand from foot is 23 inches,' and for the further reason that from 'necrosis of the lower vertebræ of spine, producing anchylosis of the spinal column and destruction of some of the spinal nerves,' he is unable to bend his back.

" After a careful review of all the facts in this case the Department is constrained to think that the pensioner comes under the meaning of the law granting pensions to those persons who require regular aid and attendance.

" The decision of the 6th instant is therefore overruled in so far as it denies that the pensioner requires regular aid and attendance."

Upon the receipt of this decision the then Commissioner of Pensions reissued the relator's certificate at $50 per month from January 14, 1885, the time of his last examination by the medical officers of the bureau. To this rate the present commissioner adheres, refusing to make a further reissue. This is the ground of the relator's complaint, and hence his application for a mandamus.

A rule to show cause being granted in pursuance of the former decision of this court in *United States ex rel. Miller* v. *Black*, 128 U. S. 50, the commissioner filed an answer, by which he claims, amongst other things, that his official action in the matter of pensions is not subject to revision by the courts. He further states that from the records of the Pension Bureau it appears that the relator has been borne on the pension rolls and paid as a pensioner as set forth in his petition; which rates have been fixed by the several commissioners of pensions, from time to time, in the exercise of their lawful discretion in the execution of the several pension laws applicable to the relator's case; that there is no law prescribing for a disability of the character of that of the relator a specific rate of pension; and that, in determining the rates of pension to which the relator was from time to time entitled, the several commissioners have had to determine, and in the lawful exercise of their discretion have determined, to what spe-

cific disability, the rate of pension for which was fixed by law, the unspecified disability of the relator was equivalent. The commissioner, further answering, denies that he has failed and refused to carry out the decision of the Secretary of the Interior; and alleges that the decision of the secretary made on the 6th of February, 1885, (as was the fact,) confirmed the action of the Pension Bureau in granting the relator a pension of $8 per month from August 27, 1865 ; $15 per month from June 6, 1866; $18 per month from June 4, 1872 ; and $24 per month from March 3, 1883 ; with the exception that his pension was improperly reduced on June 4, 1882, from $24 to $18 per month. The commissioner further states that, in pursuance of the decision made by the Secretary of the Interior on the 12th day of February, 1885, the Pension Bureau issued a new certificate to the relator at $24 per month from 4th June, 1882 ; and at an increase of $30 per month from 3d March, 1883, and at $50 per month from 14th January, 1885, the date of the last examination of the relator by the medical officers of the Pension Bureau; and that this action of the Pension Bureau was afterwards affirmed on the relator's appeal by Assistant Secretary of the Interior Hawkins.

The commissioner, further answering, says:

"That the provision of law under which the relator claims to be entitled to be carried on the pension rolls and paid a pension at the rate of seventy-two dollars ($72) per month from June 17, 1878, is contained in the act of Congress approved June 16, 1880, (21 Stat. at Large, p. 281,) the operation of which is limited to ' all soldiers and sailors who are now (*i.e.*, at the date of said act) receiving a pension of fifty dollars per month ($50) under the provisions of an act ' therein cited, whereas the relator, according to the showing of his own petition and in fact, was at that time only receiving a pension of $18 per month, which said rate had been theretofore fixed, as hereinbefore set forth, by the Commissioner of Pensions for the time being, in the exercise of his lawful discretion in the premises."

It is true, as stated by the commissioner, that the relator relies upon the act of June 16, 1880 ; and that this act only

provides for soldiers and sailors who were then (at the date of the act) receiving a pension of $50 per month; and that the relator was not then receiving such pension, but only a pension of $18 per month.

Without assuming to decide whether the construction given by the commissioner to the act was right or wrong, the question which we are to consider is, whether, in adopting the construction he did, and acting upon it, he disregarded and disobeyed the decision of the Secretary of the Interior. In *United States ex rel. Dunlap* v. *Black*, 128 U. S. 40, we held that the courts will not interfere with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, inasmuch as no appellate power is given them for that purpose; but that when such officers refuse to act at all in a case in which the law requires them to do so, or when by special statute, or otherwise, a mere ministerial duty is imposed upon them, and they refuse to perform it, a mandamus lies to compel them to act or to perform such ministerial duty. And in *United States ex rel. Miller* v. *Black*, 128 U. S. 50, argued at the same time, we held that when a subordinate officer is overruled by his superior having appellate jurisdiction over him, his duty to obey the decision of such superior is a ministerial duty, which he can be compelled by mandamus to perform. In the latter case, in which the relator was the same person as in the present, the record was very meagre, and did not set forth all the facts; but on the showing of the petition it seemed *prima facie* that the Commissioner of Pensions had refused to carry out the decision of the Secretary of the Interior; and we held that the court below ought at least to have granted the relator a rule to show cause why a mandamus should not issue. The relator thereupon filed a new petition, being the petition in the present case, and the court below, in obedience to our decision, granted a rule to show cause, which the commissioner answered, as before stated. He afterwards amended his answer by annexing thereto, as part thereof, a copy of the several decisions of the Secretary of the Interior, made on the 6th and 12th of February, 1885,

and a subsequent decision by the assistant secretary, made on the 28th of July, 1886, confirming the action of the Pension Bureau.

With the additional facts before us which are now presented by these documents, in connection with the answer of the commissioner, we are satisfied that there was no failure to comply with or to carry out the decision of the secretary. That decision was not that the relator was entitled to $72 per month from June 17, 1878, and to the other rates for other dates, as claimed by him; but, taking the secretary's two rescripts of February 6 and February 12, 1855, together, the decision by the first was, that the relator had been receiving all that he was entitled to under the law, except from June 4, 1882, the date when his pension was reduced from $24 per month to $18 per month; that he should be allowed the difference between those amounts; and that he was entitled to $30 per month under the act of March 3, 1883; and by the second rescript, the decision was that the relator came under the meaning of the law granting pensions to those persons who require regular aid and attendance. This was all (which is material) that the secretary decided. And this decision was fully carried out as the commissioner understood the law applicable to it. He issued a new certificate to the relator at $24 per month from 4th June, 1882, and at an increase of $30 per month from March 3, 1883, and at $50 per month from 14th of January, 1885, the latter date being the date of the last medical examination of the relator.

The new certificate follows the secretary's decision specifically except in regard to the last item, that of $50 per month from 14th January, 1885. This item was allowed as the supposed proper rate due to the relator's condition as expressed in the concluding part of the secretary's decision, namely, that he "came under the meaning of the law granting pensions to those persons who require regular aid and attendance." The secretary did not decide what the proper rate for that condition was; but left it to be decided by the commissioner under the laws then in force. The latter, by his construction of the law, rated the pension at $50 per month from the last medical

examination. As before stated, he considered the act of June 16, 1880, as not applying to the case, because the relator was not then in receipt of a pension of $50 per month; and he evidently regarded the case as coming within the terms of the previous act of June 18, 1874, 18 Stat. 78; Rev. Stat. § 4698, by which it was declared that "all persons who, while in the military or naval service of the United States, and in the line of duty, shall have been so permanently and totally disabled as to require the regular personal aid and attendance of another person, by the loss of the sight of both eyes, or by the loss of the sight of one eye, the sight of the other having been previously lost; or by the loss of both hands, or by the loss of both feet, or by any other injury resulting in total and permanent helplessness, shall be entitled to a pension of fifty dollars per month."

But, whatever may have been the grounds on which the commissioner based his conclusion, it is clear that the decision of the secretary left the matter open; that he only decided that the relator came "under the meaning of the law granting pensions to those persons who require regular aid and attendance," and that the commissioner acquiesced in this decision, and rated the pension at $50 upon the basis of it.

The relator, not being satisfied with this action of the commissioner, again appealed to the Secretary of the Interior, and the decision of the assistant secretary (Hawkins) dated July 28, 1886, was as follows: "After a careful consideration of all the papers in this case, the Department is of opinion that there is nothing in the evidence to show that Mr. Miller has been entitled to a higher rate of pension than that allowed by your office."

The making of the rate of $50 per month to commence from January 14, 1885, the date of the last medical examination of the relator, by which his condition of total and permanent disability was finally established, was based on section 4698½ of the Revised Statutes, which declares that "except in cases of permanent specific disabilities, no increase of pension shall be allowed to commence prior to the date of the examining surgeon's certificate establishing the same, made under the

pending claim for increase . . . subject to the approval of the Commissioner of Pensions."

But enough has been said to show that the allegation is unfounded on which the application for mandamus was based, namely, the allegation that the Commissioner of Pensions refused to obey the decision of the Secretary of the Interior.

The judgment is, therefore,

*Affirmed.*