TEASEL v DEPARTMENT OF MENTAL HEALTH

Docket No. 69896. Argued June 9, 1983 (Calendar No. 15).—Decided
    September 18, 1984.

    Allan Teasel was charged in the Oakland Circuit Court with
    separate instances of carrying a concealed weapon and second-
    degree criminal sexual conduct. While the criminal sexual
    conduct charge was pending, the Oakland County Probate
    Court, Norman R. Barnard, J., on the petition of Allan Teasel's
    mother, ordered him committed to the Clinton Valley Center as
    mentally ill. He had a long history of assaultive behavior and
    had been convicted of assaultive crimes. Officials of the Depart-
    ment of Mental Health released him four days after commit-
    ment and he was incarcerated in the Oakland County Jail
    pending trial on the charge of criminal sexual conduct. His
    brother then brought an action as his next friend in the
    Oakland Circuit Court against the Department of Mental
    Health, Patrick Babcock, director of the department, and An-
    thony Drabik, director of the Clinton Valley Center, seeking,
    inter alia, an injunction compelling his immediate return to a
    state mental hospital until he no longer required treatment.
    The complaint alleged that the defendant directors failed to
    review his clinical status to determine whether he was still a
    person requiring treatment before discharging him from hospi-
    talization. The court, James S. Thorburn, J., denied the defen-
    dants' motions for summary and accelerated judgment and
    ordered Allan Teasel transferred to the custody of the depart-
    ment for hospitalization. The Court of Appeals, Beasley, P.J.,
    and Bronson and M. F. Cavanagh, JJ., reversed the decision of
    the trial court, vacated its order, and granted the defendants'
    motions on the grounds that the circuit court did not have
    jurisdiction to conduct original proceedings in mental commit-
    ment cases and that he had an adequate alternative remedy,
    and remanded the case to the Oakland County Probate Court

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur 2d, Incompetent Persons §§ 44-46.
[2, 4-6] 52 Am Jur 2d, Mandamus § 77.
[3] 41 Am Jur 2d, Incompetent Persons § 45.

for a full evidentiary hearing (Docket No. 64512). The plaintiff appeals.

In a unanimous opinion by Justice Ryan (Justice Cavanagh not participating), the Supreme Court *held:*

The director of the hospital to which a mental patient is committed by the probate court, or his designee, is obligated to determine the patient's clinical status before ordering his discharge. The Director of the Department of Mental Health has no such obligation, and is not empowered to order a discharge. The circuit court, although without power to conduct *original* proceedings in mental commitment cases, is empowered to review the procedure by which a mental patient is discharged to determine whether the official ordering the discharge applied the standards set forth in the Mental Health Code in determining the patient's suitability for discharge. Where such a determination has not been made, the circuit court may compel a determination by a writ of mandamus.

1. The decision to release a patient hospitalized by court order in a state mental hospital when the patient's mental condition no longer meets the criteria of a person requiring treatment is the duty of the director of the hospital or his delegate, but not that of the Director of the Department of Mental Health. The Mental Health Code imposes a clear legal duty upon the director of a hospital to make an informed decision to discharge a patient. The nature of psychiatric care and treatment to be provided a patient and the decision whether treatment is no longer necessary are matters calling for the exercise of highly specialized informed medical judgment.

2. Where it is alleged that such professional judgment has not been exercised, the circuit court has the power under the constitution and the Revised Judicature Act to review the procedure by which a patient, hospitalized under a probate court order of civil commitment, is discharged in order to determine whether the official ordering discharge based the decision on the criteria for discharge established by the Legislature. If it is determined that such a decision has not been made, the circuit court is empowered to compel the exercise of the official's judgment by a writ of mandamus. Mandamus will lie to require a body or an officer charged with a duty to take action in the matter even though the execution of the duty may involve some measure of discretion. It will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner. A circuit court has the power to compel an agency of government, through its officials, to discharge a duty

imposed by law. The court may not create a duty where none existed before, nor mandate action where the decision whether to act is discretionary. Rather, its power is the constitutional power of a circuit court, upon a complaint by an aggrieved party, to direct that a duty imposed by law upon the executive department of government to make a decision according to legislatively established criteria be carried out.

3. In this case, the plaintiff alleged that Allan Teasel was released from the Clinton Valley Center without review of his clinical status. The circuit court has the jurisdiction to determine whether the director of the center made an informed judgment in ordering Allan Teasel's release and to grant relief if he did not. The probate court does not have such jurisdiction. The remand of the case by the Court of Appeals to the probate court for a hearing to determine whether informed judgment was made and the grant of the defendant's motions was error. The case must be remanded to the circuit court.

Reversed and remanded.

1. MENTAL HEALTH — CIRCUIT COURTS — STATE HOSPITALS — DISCHARGE OF PATIENTS.

A circuit court, although without power to conduct *original* proceedings in mental commitment cases, is empowered to review the procedure by which a mental patient who is hospitalized under a probate court order of civil commitment is discharged in order to determine whether the official ordering the discharge made the determination to discharge confided to him by law according to the criteria for discharge established by the Legislature (Const 1963, art 6, § 13; MCL 600.605; MSA 27A.605).

2. MENTAL HEALTH — CIRCUIT COURTS — STATE HOSPITALS — DISCHARGE OF PATIENTS — MANDAMUS.

A circuit court, upon determining that the director of a mental health facility has failed to make a determination to discharge a patient hospitalized under a probate court order of civil commitment as confided to him by law, may compel determination by a writ of mandamus (Const 1963, art 6, § 13; MCL 600.605; MSA 27A.605).

3. MENTAL HEALTH — STATE HOSPITALS — DISCHARGE OF PATIENTS.

The determination whether to discharge a patient hospitalized by court order in a state mental hospital when the patient's mental condition no longer meets the criteria of a person requiring treatment is confided to the director of the hospital or his delegate, but not to the Director of the Department of

Mental Health (MCL 330.1400[c], 330.1401, 330.1476; MSA 14.800[400][c], 14.800[401], 14.800[476]).

4. MANDAMUS — ADMINISTRATIVE LAW.

Mandamus will lie to compel the exercise of discretion by an administrative body or by an officer charged with a duty to take action in a matter, but it will not lie to compel exercise of discretion in a particular manner.

5. MANDAMUS — ADMINISTRATIVE LAW — CIRCUIT COURTS.

The circuit court, by a writ of mandamus, has the power to compel an agency of the government, through its officials, to discharge a duty imposed by law; its power is the constitutional power of the circuit court, upon a complaint by an aggrieved party, to direct that a duty imposed by law upon the executive department of government to make a discretionary decision according to legislatively established criteria be carried out.

6. MANDAMUS — EQUITABLE RELIEF — PROBATE COURTS.

A probate court does not have the power to issue mandamus or to grant general equitable relief and is unable to compel an exercise of discretion by a state official (Const 1963, art 6, § 15).

*Gerald Hale Ladue* and *Donald E. Gratrix* for the plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *George L. McCargar* and *Thomas R. Wheeker*, Assistant Attorneys General, for the defendant.

RYAN, J. We granted leave to appeal in this case to determine the authority of a circuit court to review the decision of officials of the Department of Mental Health ordering an involuntarily committed patient to be discharged from hospitalization.

## I

An understanding of the plaintiff's history is necessary for a full appreciation of the basis for our decision. Because this case is before us on

review of the trial court's denial of summary and accelerated judgment and the Court of Appeals reversal thereof, we are without a factual record developed in the trial court and must depend for that history and other facts of the case upon the plaintiff's well-pleaded allegations which, for purposes of our decision, are taken as true.

Allan Teasel was born in 1951 and was first hospitalized at the Hawthorn Center of the Michigan Department of Mental Health in July of 1961 when he was ten years old. He was referred to the Hawthorn Center following his suspension from school for "dangerous unprovoked aggression to peers". He was also "dangerously aggressive to siblings and peers at home and in the neighborhood and seemed for the most part a very confused and unhappy child". He was discharged from the Hawthorn Center on November 23, 1961, with the following recommendation:

"Allan was discharged home on trial, the recommendation that of eventual hospitalization in a long-term program in a state hospital. While awaiting this he should have medication and a home bound teacher."

In October, 1962, upon his parents' petition, Mr. Teasel was ordered by the probate court to be hospitalized at the Northville State Hospital. He remained a patient in that institution for 12 years and was discharged on December 9, 1974. It appears from the sketchy factual background contained in the pleadings before us that, during his commitment, Mr. Teasel actually resided from time to time "in the community [and] has alternated between being with his mother and being in a halfway house".

In June or July of 1974, Mr. Teasel was arrested and charged with four separate and unrelated

offenses which we number for convenience of later reference:

1. Assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, for having slashed a 15-year-old girl in the back on June 12, 1974, necessitating 80 stitches to close the wound;

2. Assault with intent to murder, MCL 750.83; MSA 28.278, for having slashed a 14-year-old girl in the back on June 25, 1974, necessitating 36 stitches to close the wound;

3. Assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, for having slashed a 12-year-old girl in the back on June 28, 1974, requiring 80 stitches to close the wound; and

4. Assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, for a knife attack upon a young girl on an unspecified date in the summer of 1974.

The first three of the foregoing charges were brought in the Recorder's Court of the City of Detroit and the fourth was brought in the Third Judicial Circuit Court. The first and third of the charges resulted in negotiated pleas of guilty on November 21, 1974, to charges of assault with intent to do great bodily harm less than murder and felonious assault (MCL 750.82; MSA 28.277), respectively, in return for the dismissal of the second of the enumerated offenses. On December 20, 1974, Mr. Teasel was sentenced to serve concurrent terms of imprisonment of 2 to 10 and 2 to 4 years.[1] He was then brought to trial upon his plea of not guilty to the fourth of the foregoing

---

[1] We are advised by his counsel that because of his disruptive behavior and violation of disciplinary regulations in prison, Mr. Teasel was required to serve the maximum term of confinement.

assault charges, and was acquitted by reason of insanity by the trial judge on March 28, 1975.[2]

Plaintiff was released from prison in December of 1980. He was arrested in February of 1981 for carrying a concealed weapon, and again in June of 1981 for second-degree criminal sexual conduct. The criminal sexual conduct charge was brought because it was alleged that Mr. Teasel "walked nearby a girl who was on a lunch break from the store where she worked seated beside the store eating a sandwich when plaintiff suddenly bent down and grabbed her front ripping open smock, shirt, and bra". The concealed weapons charge was dismissed, apparently for lack of probable cause for the arrest.

In June of 1981, while the criminal sexual conduct charge was pending in the Sixth Judicial Circuit Court, Mr. Teasel's mother petitioned the Oakland County Probate Court to have her son committed to a state mental institution. Mr. Teasel was admitted on June 24, 1981, to the Clinton Valley Center, but was released on July 1, 1981. Mr. Teasel's mother again petitioned the Oakland County Probate Court for the commitment of her son on November 4, 1981. That petition was supported by the affidavits of two physicians who certified that Mr. Teasel was "mentally ill" and was "a person requiring treatment * * * who meets the requirements for judicial admis-

---

[2] A forensic evaluation done by a non-physician at the Forensic Center of the Department of Mental Health to determine Mr. Teasel's competence to stand trial resulted in the opinion that Mr. Teasel was competent to stand trial "[d]espite the presence of moderate mental illness".

A court-appointed psychiatrist, who examined the plaintiff in preparation for the trial, concluded that he suffered from "schizophrenic reaction, paranoid type, chronic, active", and "due to the fact that he is dangerous to others and possibly to himself * * * he should be committed to a state hospital for the criminally insane for further observation, care and treatment".

sion". After a hearing on November 16, 1981, the probate court ordered Mr. Teasel to be hospitalized, finding

"[b]y clear and convincing evidence [that Mr. Teasel] is a person requiring treatment because [he] is mentally ill, and as a result of that illness: can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure others, and has engaged in an act or acts or made significant threats that are substantially supportive of the expectation".

The probate court order, filed on November 16, 1981, required that Mr. Teasel be hospitalized at the Clinton Valley Center. Officials of the defendant Department of Mental Health released him from hospitalization four days later, on November 20, 1981.[3]

On January 4, 1982, while Mr. Teasel was incarcerated in the Oakland County Jail awaiting trial on the criminal sexual conduct charge, this lawsuit was filed in the Sixth Judicial Circuit Court.[4] In a complaint entitled "Complaint for Injunctive Relief", Mr. Teasel prayed for the following relief:

—An injunction compelling the Department of Mental Health to return him immediately to a state hospital for treatment until he was no longer

[3] The defendants agree that Mr. Teasel was released on November 20, 1981, but claim that he had been hospitalized for 16 days.

[4] At the time the complaint in this case was filed, the plaintiff was confined in the Oakland County Jail. While it is not entirely clear from the record before us, it appears that except for the few days of his hospitalization in mid-November, 1981, Mr. Teasel had been held in the Oakland County Jail continuously since June, 1981, awaiting trial on the criminal sexual conduct charge. MCL 330.2002a(3); MSA 14.800(1002a)(3), allows for the involuntary admission into a state mental health facility of a person confined in a place of detention operated by a political subdivision of the state, and provides that the admission is to be governed by §§ 423-444 of the Mental Health Code, MCL 330.1423-330.1444; MSA 14.800(423)-14.800(444).

"a person requiring treatment" as defined by statute;

—An injunction compelling the defendant to file petitions for plaintiff's commitment to a hospital facility;

—An order requiring the Department of Mental Health to show cause why the requested injunctive relief should not be granted; and

—Other appropriate equitable relief.

The Department of Mental Health moved for summary or accelerated judgment.[5] Before decision on the defendant's motions, Mr. Teasel filed an amended complaint naming the directors of the Michigan Department of Mental Health and the Clinton Valley Center as additional defendants. He alleged in the amended complaint that the newly added defendants:

—"[D]ischarged [the] plaintiff from hospitalization in violation of the court order, the statutes and constitution" because he was "still a person requiring treatment as defined by the statute"; and

—"[F]ailed to review the clinical status of plaintiff to determine whether he was still a person requiring treatment" before discharging him from hospitalization.

After a hearing on the defendants' motions for summary and accelerated judgments, the circuit

---

[5] Summary judgment was sought on the ground that plaintiff had failed to state a claim upon which relief might be granted, GCR 1963, 117.2(1), because "[p]laintiff has [the] adequate remedy at law" of petitioning the probate court "for an order for plaintiff's hospitalization" and because "[n]either mandamus nor a mandatory injunction will issue where * * * the act sought to be compelled is discretionary". Accelerated judgment was sought on the basis that "the state is immune from suit in a circuit court" and because the "probate courts * * * have exclusive jurisdiction in proceeding for the hospitalization of an alleged mentally ill person".

court denied the motions and ordered Mr. Teasel transferred from the Oakland County Jail to the custody of the Michigan Department of Mental Health to be hospitalized in a mental institution until further order of the court.[6]

The Court of Appeals peremptorily reversed the decision of the trial court, vacated its order, and "granted" the motions for summary and accelerated judgments that the defendants had filed in the circuit court. The Court of Appeals treated the plaintiff's complaint for injunctive relief, which it identified as "Complaint for Mandamus", as a request for a hearing pursuant to GCR 1963, 820.1(7) and remanded the case "[t]o the Oakland County Probate Court for a full evidentiary hearing regarding the facts and circumstances surrounding the release of Allan Teasel by the Department of Mental Health". The probate court was also directed to "[m]ake findings whether there was evidence to support the release of Allan Teasel in the light of his full psychiatric history, [to determine] whether his release constituted an

[6] No testimony was taken or other evidence produced at the hearing. The record of the motion hearing consists entirely of the arguments of counsel and counsel's colloquy with the court. The order of the trial court is as follows:

"Defendants having filed a motion for summary and accelerated judgment, arguments of counsel having been heard thereon, and the court being fully advised in the premises;

"It is hereby ordered that defendants' motion for summary and accelerated judgment be denied.

"It is further ordered that the Oakland County Sheriff immediately transfer Allan Teasel from the Oakland County Jail to the physical custody of the Michigan Department of Mental Health.

"It is further ordered that the Michigan Department of Mental Health confine Allan Teasel to a mental institution under their jurisdiction and control where he shall receive mental health treatment.

"It is further ordered that Allan Teasel shall not be released from the custody of the Michigan Department of Mental Health until further order of the court." (Order of the Oakland Circuit Court, Thorburn, J., approved for filing on May 13, 1982.)

abuse of discretion and [to make] * * * other orders, if any be appropriate".[7]

We granted leave to appeal. 417 Mich 884 (1983).

[7] The order of the Court of Appeals, in full, is as follows:

"In this cause a motion for peremptory reversal, motion for stay, and motion for immediate consideration are filed by defendants-appellants, and an answer in opposition thereto having been filed, and due consideration thereof having been had by the Court,

"It is ordered that the motion for immediate consideration be, and the same is hereby granted; and,

"It is further ordered, pursuant to GCR 1963, 820.1(7), that the May 13, 1982 order of the Oakland Circuit Court in this cause be, and the same is hereby vacated; and,

"It is further ordered that defendants' motion for accelerated judgment be, and the same is hereby granted, the circuit court being without jurisdiction to conduct original proceedings in mental commitment cases, MCL 330.1400(g); MSA 14.800(400)(g); *People v McQuillan*, 392 Mich 511, 544-545 [221 NW2d 569] (1974); and,

"It is further ordered that defendants' motion for summary judgment be, and the same is hereby granted, both because plaintiff has an adequate, alternative remedy, see MCL 330.1478; MSA 14.800(478) and 1979 AC, R 330.10004 and because defendants' determination that Allan Teasel was no longer a person qualifying for involuntary commitment was discretionary, *In re Wagstaff*, 93 Mich App 755, 760-761 [287 NW2d 339] (1979); *Fuhrmann v Hattaway*, 109 Mich App 429, 436-437 [311 NW2d 379] (1981), and the consequent obligation to discharge Allan Teasel mandatory, MCL 330.1476; MSA 14.800(476); *In re Wagstaff, id.*; and,

"It is further ordered that the motion for stay be, and the same is hereby denied as moot by virtue of the foregoing provisions of this order.

"It is further ordered that, since it appears that there may be substantial question whether there is an evidentiary basis for the release of plaintiff, Allan Teasel, we treat plaintiff's complaint for mandamus as a request for hearing under GCR 1963, 820.1(7), this case be, and the same hereby is remanded to the Oakland County Probate Court for a full evidentiary hearing regarding the facts and circumstances surrounding the release of Allan Teasel by the Department of Mental Health, after which the probate judge shall make findings whether there was evidence to support the release of Allan Teasel in the light of his full psychiatric history, whether his release constituted an abuse of discretion and for such other orders, if any be appropriate.

"This order is also without prejudice to the institution of new involuntary commitment proceedings in a court of appropriate jurisdiction. This Court retains no further jurisdiction." (Order of the Court of Appeals, BEASLEY, P.J., and BRONSON and M. F. CAVANAGH, JJ., entered on July 9, 1982.)

## II

The relief Mr. Teasel seeks, broadly stated, is hospitalization and treatment in a state institution until the condition of his health permits his discharge according to the terms of MCL 330.1476; MSA 14.800(476). Narrowly stated, the relief he seeks is an order returning him to the Clinton Valley Center for hospitalization until the individual defendants examine his clinical status and make an informed determination whether he is a person who is "clinically suitable for discharge" or requires further hospitalization as a "person requiring treatment" under §§ 476 and 401, respectively, of the Mental Health Code.[8]

Mr. Teasel claims entitlement to the relief he seeks on two grounds:

---

[8] MCL 330.1476; MSA 14.800(476), in conjunction with MCL 330.1400(c); MSA 14.800(400)(c), provides in part that the chief officer of a hospital, or a person authorized to act on his or her behalf:

"(1) *[M]ay* at any time discharge a voluntarily or judicially hospitalized patient whom the director deems *clinically suitable for discharge.*" (Emphasis added.)
and

"(2) *[S]hall* discharge a patient hospitalized by court order when the patient's mental condition is such that he no longer meets the criteria of *a person requiring treatment.*" (Emphasis added.)

MCL 330.1401; MSA 14.800(401) provides:

"As used in this chapter 'persons requiring treatment' means (a), (b), or (c):

"(a) A person who is mentally ill, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

"(b) A person who is mentally ill, and who as a result of that mental illness is unable to attend to those of his basic physical needs such as food, clothing, or shelter that must be attended to in order for him to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

"(c) A person who is mentally ill, whose judgment is so impaired that he is unable to understand his need for treatment and whose continued behavior as the result of this mental illness can reasonably

First, he asserts that the defendants discharged him from hospitalization in contravention of the probate court order of commitment and the Mental Health Code.

Second, he claims that neither the director of the Clinton Valley Center nor the Director of the Department of Mental Health ever reviewed his clinical status and medical records prior to his discharge from the Clinton Valley Center in order to determine whether he was still "a person requiring treatment" and thus failed to make the discharge decision as required by § 476. He claims that the Director of the Department of Mental Health merely ordered his discharge arbitrarily and in keeping with what Mr. Teasel characterizes as the "revolving door policy" of the Department of Mental Health. Mr. Teasel, therefore, seeks judicial intervention to compel the Department of Mental Health, through the individual defendants, to inform themselves of Teasel's clinical status before ordering his discharge from hospitalization.

The defendants contend, as will be more fully detailed below, that the circuit court is entirely without jurisdiction to entertain the plaintiff's request for relief.

To the extent that the first of the plaintiff's claims is a request of this Court to pass upon the substantive correctness of the determination, if any, by the defendants that Mr. Teasel, at the time of his discharge from hospitalization, was not still a "person requiring treatment", in the sense that he was "mentally ill" as defined in § 401, we decline to do so for the reasons stated in Part IV.

We are content to examine the narrower ques-

be expected, on the basis of competent medical opinion, to result in significant physical harm to himself or others. This person shall be hospitalized only under the provisions of sections 434 through 438 of this act."

tion raised by Mr. Teasel which we perceive as having two subissues: 1) who, in the Department of Mental Health, is required by the Mental Health Code to determine an involuntarily committed patient's eligibility for discharge from hospitalization, and 2) whether the circuit court has the authority to compel the Department of Mental Health, by injunctive order, to continue the care and treatment of an involuntarily committed patient until the appropriate official of the Department of Mental Health, applying the standards set forth in the Mental Health Code, determines such patient's clinical suitability for discharge from hospitalization.

Our answer to the first question, applied to the facts of this case, is that the director of the Clinton Valley Center, or his designee, is obligated to determine Mr. Teasel's clinical status before ordering his discharge from hospitalization. Our answer to the second question is that the circuit court has authority to compel the exercise of such judgment.

A

Before stating our reasons for concluding that the circuit court has jurisdiction to entertain this litigation, and to order a portion of the relief requested, it may be helpful to describe more fully the specific claims of the parties and our understanding of the powers and duties of the defendants under the Mental Health Code concerning the hospitalization, care, treatment, and discharge of involuntarily committed patients.

The plaintiff claims that the circuit court has jurisdiction to compel the director of the Clinton Valley Center to make an informed decision whether to release him, and jurisdiction to order the plaintiff returned to the Clinton Valley Center

until such decision is made. The defendants assert that the circuit court's order of May 13, 1982, directing that Mr. Teasel be returned to the Clinton Valley Center, is, in essence, a civil commitment order issued without authority since the Legislature has confided to the probate court the exclusive jurisdiction under the Mental Health Code to order a person committed to a mental hospital.

The plaintiff responds that he does not question the exclusive jurisdiction of the probate court to order civil commitment under the Mental Health Code. He insists, however, that the circuit court has the constitutionally conferred authority to review for abuse of discretion, including the failure to decide according to statutory requirements, the decision of the director of a mental health facility to discharge a judicially committed patient, and the authority to order the continued hospitalization of a properly committed patient until the director renders a determination according to the standards for discharge enunciated in § 476. See fn 8.

We turn first to the question whether either of the individual defendants had a duty to review the plaintiff's clinical status and, upon the basis of that and any other relevant information, decide to discharge him from hospitalization in June, 1981. We will then address the question whether the circuit court has jurisdiction to order that a decision be made.

At the hearing before the circuit court on the motions for summary and accelerated judgment, counsel for Mr. Teasel claimed that neither the Director of the Department of Mental Health nor the director of the Clinton Valley Center reviewed Mr. Teasel's clinical status before he was ordered

discharged from the hospital. The assistant attorney general, appearing for the defendants, did not deny that claim but simply asserted that:

"The allegations of the amended complaint insofar as they pertain to these two defendants are that each of them failed to review the clinical records of Allan Teasel before he was discharged from the Clinton Valley facility.

\* \* \*

"There is no duty or obligation in law for the director of the Department of Mental Health or the director of a facility to review a patient's record before he is discharged".

Indeed, at the circuit court hearing, there was no representation by the defendants that there had been *any* review of plaintiff's clinical status by the named defendants or by anyone to whom such authority had been delegated. Plaintiff's counsel stated, at oral argument before the trial court and before this Court, that it was impossible to know from the plaintiff's hospital record whether there had been a review of plaintiff's clinical status by anyone, and stated the belief that there had been none.

The assistant attorney general, appearing on behalf of the defendants, did not, until appearing before this Court, represent that there had been *any* clinical review of the plaintiff's medical status by *anyone.* Before this Court, the assistant attorney general opined that a "team" determination had been made to discharge plaintiff, and that, "I can't say for sure whether the chief clinician actually interviewed Allan Teasel. I know that he did review the decision of the treatment team, and with the treatment or team psychiatrist and reviewed their recommendation".

Nowhere in the Mental Health Code is the Director of the Department of Mental Health personally charged with the responsibility to determine a patient's clinical readiness for discharge, nor is he empowered to order such discharge. While the Legislature has explicitly authorized "the director" to "discharge" judicially hospitalized patients whom the "director deems clinically suitable for discharge", and has mandated the "director" to "discharge a patient hospitalized by court order when the patient's mental condition is such that he no longer meets the criteria of a person requiring treatment", see fn 8, the "director" to which the statute has reference is defined in § 400 as "the chief officer of a hospital or a person authorized by a director to act on his behalf". The Director of the Department of Mental Health has no such duty. It is clear then that broad discretion is confided to the director of a hospital facility, or his delegate, concerning the decision whether a patient is a person "clinically suitable for discharge" or "requiring treatment", but it is not confided to the Director of the Department of Mental Health.

The standards or criteria according to which the determination is to be made are established not only in § 476, see fn 8, but also by fair implication in other relevant provisions of the Mental Health Code. The Department of Mental Health has the duty, for example, to "ensure that adequate and appropriate mental health services are available to all citizens throughout the state". MCL 330.1116; MSA 14.800(116). Probate courts may order an individual "hospitalized", MCL 330.1468; MSA 14.800(468), and hospitalization is defined as providing "treatment for a person as an inpatient". MCL 330.1400(d); MSA 14.800(400)(d). Treatment is defined as including "care, diagnostic, and thera-

peutic services", MCL 330.1400(e); MSA 14.800(400)(e), and the decision to discharge a patient depends upon the decision of a health facility director, or his delegate, that a patient is "clinically suitable for discharge", MCL 330.1476(1); MSA 14.800(476)(1), or "no longer meets the criteria of a person requiring treatment", MCL 330.1476(2); MSA 14.800(476)(2).

Taken together, the foregoing provisions clearly mean that Mr. Teasel's judicially ordered hospitalization was for the purpose of treatment, including therapy, and the decision to discharge him from treatment required the competent professional judgment of the director of the Clinton Valley Center "or a person authorized by [him]" that the plaintiff met the statutory criteria for discharge. Such a judgment could not have been made unless Mr. Teasel's clinical status was evaluated by reference to his medical records, history, and mental health at the time of discharge. Plainly, a judgment concerning those matters calls for the exercise of sound and informed professional clinical discretion.

B

As we have said, the Mental Health Code, taken as a whole, imposes a clear legal duty upon the director of a facility to which a patient has been judicially committed, or his designee, to make an informed decision to discharge the patient. Manifestly, the decision whether a hospitalized patient is "clinically suitable for discharge" or "no longer meets the criteria of a person requiring treatment" is a matter of professional judgment. The nature of psychiatric care and treatment to be provided to a hospitalized patient and the decision

whether treatment is any longer necessary are matters calling for the exercise of informed medical judgment of a highly specialized sort.

Although it is clear to us that the decision to release a judicially hospitalized patient is discretionary with health care professionals, it is equally clear to us that those health care professionals are under a clear duty to render an informed determination whether to release such a patient from care. Mr. Teasel claims his discharge was solely the result of application of an alleged "revolving door policy" by which persons who are charged with and awaiting trial for criminal offenses, and who are judicially committed to a mental health facility by order of the probate court, are given no care and treatment, but instead are promptly discharged from hospitalization without regard to the condition of their mental health and returned to the criminal courts for prosecution.

The defendants have taken the position that the decision whether to discharge a patient from hospitalization is confided, by § 476 of the Mental Health Code, to the director of a hospital facility and that it is a decision which is unreviewable by any court, even for abuse, or for the director's complete failure to decide in accordance with the statutory provisions. Indeed, the assistant attorney general argued before this Court that even if the release decision were determined by "flipping a coin", no court would have authority to review that procedure or order a remedy. The remedy for such a concededly hypothetical situation, according to the assistant attorney general, would be an appeal to the director of the institution, to the Director of the Department of Mental Health, or ultimately to the Governor; and if the Governor did not order the necessary relief, "then I suppose

next time you elect a new Governor. These are decisions of the executive branch, and not of the courts".[9]

We do not agree. We hold that a circuit court is constitutionally and statutorily empowered to review, upon a proper petition, the procedure by which a patient, hospitalized under a probate court order of civil commitment, is discharged, in order to determine whether the official ordering the discharge decided according to the criteria for discharge established by the Legislature.

We hold further that if it is determined, upon an evidentiary hearing, that such an informed decision has not been made, a circuit court is empowered to compel its making.

Const 1963, art 6, § 13 provides, in part:

"The circuit court shall have original jurisdiction in all matters not prohibited by law; * * * power to issue, hear and determine prerogative and remedial writs".

MCL 600.605; MSA 27A.605 provides:

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state".

See also MCL 600.601; MSA 27A.601, MCL 600.4401; MSA 27A.4401.

It is beyond dispute that the constitutional authority of circuit courts includes the common-law power to issue writs of mandamus.

Mandamus is an extraordinary remedy and will

---

[9] Oral argument of the assistant attorney general before the Supreme Court, June 9, 1983.

not lie to control the exercise or direction of the discretion to be exercised. Moreover, it will not lie for the purpose of reviewing, revising, or controlling the exercise of discretion reposed in administrative bodies. However, the writ will lie to require a body or an officer charged with a duty to take action in the matter, notwithstanding the fact that the execution of that duty may involve some measure of discretion. See *Bischoff v Wayne County,* 320 Mich 376, 385-387; 31 NW2d 798 (1948); *Michigan State Dental Society v Secretary of State,* 294 Mich 503, 514-519; 293 NW 865 (1940).[10] Stated otherwise, mandamus will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner.[11]

[10] See also Merrill, Mandamus, §§ 31-32 (1892); *United States ex rel Dunlap v Black,* 128 US 40, 48-49; 9 S Ct 12; 32 L Ed 354 (1888); *United States ex rel Miller v Raum,* 135 US 200, 204; 10 S Ct 820; 34 L Ed 105 (1890).

[11] *Sodus Central School Dist v Kreps,* 468 F Supp 884, 885 (WD NY, 1978); *State v Cannon,* 369 So 2d 32, 33 (Ala, 1979); *Tinsley v Palo Alto Unified School Dist,* 91 Cal App 3d 871, 908; 154 Cal Rptr 591 (1979); *Lamm v Barber,* 192 Colo 511, 517; 565 P2d 538 (1977), disapproved in part on other grounds *Boulder County Bd of Comm'rs v Fifty-First General Assembly of Colorado,* 198 Colo 302, 307; 599 P2d 887 (1979); *Development Authority of De Kalb County v Beverly Enterprises,* 247 Ga 64, 65, fn 1; 274 SE2d 324 (1981); *Johnson v Mini,* 62 Ill App 3d 945, 948; 379 NE2d 826 (1978); *Scinocca v St Louis County Bd of Comm'rs,* 281 NW2d 659, 661 (Minn, 1979) ("Mandamus may be used to review a refusal to exercise any discretion whatsoever or to review the arbitrary and capricious exercise of discretion"); *Cain v Dep't of Health & Environmental Sciences,* 177 Mont 448, 451; 582 P2d 332 (1978); *State ex rel Panzica v Village of Mayfield,* 54 Ohio App 2d 68, 70; 375 NE2d 63 (1977); *Philadelphia Newspapers, Inc v Jerome,* 478 Pa 484, 494, fn 11; 387 A2d 425 (1978), *app dis* 443 US 913 (1979); *Peterson v Dep't of Ecology,* 92 Wash 2d 306, 314; 596 P2d 285 (1979); *Kelly v Curtis,* 287 A2d 426, 429 (Me, 1972); *Ladner v Deposit Guaranty National Bank,* 290 So 2d 263, 267 (Miss, 1973) ("The rule, in brief, is that if an administrative officer has discretion in a matter, mandamus may compel the officer to act, but may not control or dictate his discretion for a desired result"); *State ex rel Waller v Industrial Comm,* 44 Ohio L Abs 618; 66 NE2d 148, 152 (Ohio App, 1944); *Rock v Thompson,* 85 Ill 2d 410, 416; 426 NE2d 891 (1981) (plurality) ("We agree that while *mandamus* will not lie to direct the manner in which the discretion is to be exercised, it is available to compel the performance of an action which requires the

This Court has held that it has the power to compel a county board of supervisors to act in their executive capacity and to pay an obligation imposed by law, *People ex rel Bristow v Macomb County Supervisors,* 3 Mich 475 (1855). We have issued a writ of mandamus compelling the expenditure of withheld funds that by law could only be used for the completion of a jail, *Attorney General ex rel Greenfield v Alcona County Board of Supervisors,* 167 Mich 666; 133 NW 825 (1911). We have ordered that boards of supervisors render unto public employees their salaries that were owing them, *Sturgis v Allegan County,* 343 Mich 209; 72 NW2d 56 (1955), and we have stated that a court has the power to compel commissioners responsible for the upkeep and repair of a jail to comply with the Legislature's directive upon a showing that they have failed or refused to meet their responsibility under the statute, *Wayne County Jail Inmates v Wayne County Sheriff,* 391 Mich 359; 216 NW2d 910 (1974). When agencies of government fail to perform duties imposed by the Legislature or the constitution, the courts will not hesitate to order performance. *Jail Inmates, supra; King v Director of Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977); *Wayne County Prosecutor v Wayne County Bd of Comm'rs,* 93 Mich App 114, 121; 286 NW2d 62 (1979); *Kosa v Treasury Dep't,* 78 Mich App 316; 259 NW2d 463 (1977), *aff'd in part and modified on other grounds* 408 Mich 356, 383; 292 NW2d 452 (1980). See, generally, 4 Davis, Administrative Law, ch 23.

We think, therefore, that it is clear and settled that a circuit court has the power to compel an

exercise of discretion or even to compel the exercise of discretion itself.").

agency of government, through its officials, to discharge a duty imposed by law. The power is not one to create a duty where none existed before or to mandate action where the decision whether to act is discretionary. Rather, the power is the constitutional power of a circuit court to direct, upon the complaint of an aggrieved party, that a duty imposed by law upon the executive department of government to make a decision according to legislatively established criteria be carried out. Were it otherwise, our citizens would be powerless to compel their public servants to conduct the business of government—to make a decision, whether good or bad, but some decision, based upon the legislatively established criteria where the duty to *make* a decision is clear.

While, as we have said, we do not consider today whether a circuit court has authority to review the substantive correctness of the professional judgment that a patient is "clinically suitable for discharge" or no longer "a person requiring treatment", we do hold that the circuit court is empowered, upon general principles, to determine, upon the petition of a patient hospitalized by court order, whether the decision reposed by statute in an official of the Department of Mental Health to discharge such a patient, has been reached following a full and careful evaluation of the individualized facts of the patient's clinical record and the current condition of his mental health, and to compel, by writ of mandamus, the exercise of such professional judgment as a condition precedent to discharging the patient.

## III

### A

Addressing the specific relief afforded by the

circuit court in this case (see fn 6), the defendants assert that the circuit court's order, while not so denominated, was in reality a writ of mandamus compelling the directors of the Department of Mental Health and the Clinton Valley Center to readmit and retain appellant in a mental health facility.

However, defendants argue that, even assuming the court's authority to act, mandamus is not a proper remedy for two reasons:

First, mandamus will not issue unless there is no other adequate remedy, *Hill v State Highway Comm,* 382 Mich 398, 402; 170 NW2d 18 (1969), and plaintiff had the alternative remedies of seeking private treatment on a voluntary basis or petitioning the probate court for a new involuntary commitment order.

Second, mandamus should not have issued in this case because plaintiff had no clear, legal right, nor did the defendants have any clear, legal duty, to admit and retain plaintiff in a mental health facility.

Neither argument is persuasive. As to the first, while it is evident that treatment on a voluntary basis, even if it were within Mr. Teasel's financial capacity, would address his need for mental health care, the point is immaterial. While the long-term purpose of the appellant's lawsuit is to obtain the care and treatment of which he was judicially declared in need, its immediate purpose is to compel the defendants to perform the duty imposed upon them by law before ordering Mr. Teasel to be discharged from hospitalization. The "alternative remedy" defendants suggest would operate to circumvent that duty. In addition, we fail to perceive how a petition by appellant, seeking a new involuntary commitment in the probate court, provides

any remedy at all. Plaintiff is asserting that defendants have a "revolving door policy", evidenced by the failure of the defendants to review a patient's, particularly his own, clinical status prior to the release decision. The "remedy" of seeking another involuntary commitment is not a remedy that will rectify the situation of which the plaintiff complains.

Defendant's second point is that "mandamus should not have issued in this case [because] plaintiff had no clear, legal right, nor did the defendants have any clear, legal duty, to admit and retain Allan Teasel in a mental health facility".

Whether the defendant had a duty to admit Mr. Teasel to a mental health facility upon the commitment order of the probate court is not an issue in this lawsuit and is therefore immaterial. Mr. Teasel does not claim that the defendants had a "clear legal duty" to retain him at the Clinton Valley Center, but that "they"[12] had a "clear legal duty" to review his "clinical status" prior to the decision to release him, in order to make the necessary informed professional judgment whether he was "clinically suitable for release" or still "a person requiring treatment" as defined by law.

We agree. It is contrary to the entire import of the Mental Health Code that defendants could make a decision to release based, as was hypothecated, on flipping a coin or by arbitrarily releasing, for example, every third patient. Admittedly, the nature of decisions concerning psychiatric care, treatment, and discharge from hospitalization involves the application of specialized knowledge, experience, and professional judgment. However,

[12] We have held that the Legislature has not imposed the decision-making duty upon the Director of the Department of Mental Health and that it is imposed upon the director of the Clinton Valley Center or his or her designee.

the plaintiff does not seek to control the director's discretion, but to compel him to make an informed judgment.[13]

---

[13] Mandamus is the traditional remedy for compelling performance of legal duties by public officials. See, generally, 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 181 and Supp. Mandamus will lie to enforce a clear legal duty.

We observe in passing that neither party has addressed the specific question whether the circuit court had jurisdiction to issue its order in this case. It has been assumed that plaintiff's complaint was one for mandamus. MCL 600.4401; MSA 27A.4401 allows a complaint for mandamus against a state officer to be brought in either the circuit court or in the Court of Appeals. However, GCR 1963, 714.1(1), requires that a complaint for mandamus against a state officer be instituted in the Court of Appeals. See MCR 3.305(A)(1), *effective March 1, 1985* (actions for mandamus against a state officer may be brought in the Court of Appeals or the circuit court).

The plaintiff did not denominate his complaint as a complaint for mandamus. Indeed, his amended complaint sought *injunctive* relief, and does not mention mandamus. The word "mandamus" does not appear in the record of the May 5, 1982, hearing that culminated in the trial court's order requiring the Department of Mental Health to place plaintiff in a mental institution, although the term "mandatory injunction" does.

The Court of Appeals, without explanation, stated, in its order, fn 7 *supra,* that it was treating "plaintiff's complaint for mandamus" as a request pursuant to GCR 1963, 820.1(7). It is wholly unclear whether the trial judge considered the difference between a mandatory injunction and a writ of mandamus.

A circuit court has the power and jurisdiction possessed by courts of record at common law (as altered by constitution, laws, and rules of the Supreme Court) and it has the power and jurisdiction possessed by courts and judges in chancery in England on March 1, 1847 (as altered by constitution, laws, and rules of the Supreme Court). MCL 600.601; MSA 27A.601. There has been a merger of law and equity in this jurisdiction. Const 1963, art 6, § 5; MCL 600.223(4); MSA 27A.223(4); GCR 1963, 12.

It is unclear, however, whether the prior statutory prohibition and the current General Court Rule against bringing writs of mandamus against state officers in the circuit court were meant to apply to mandatory injunctions. A writ of mandamus is an extraordinary remedy at law; a mandatory injunction is traditionally a remedy in equity. See, generally, 43 CJS, Injunctions, §§ 3 and 8; 55 CJS, Mandamus, § 2(b); 52 Am Jur 2d, Mandamus, § 4; 42 Am Jur 2d, Injunctions, § 23.

A mandatory injunction is, in the strictest sense, an interlocutory instrument. *Burch v State Highway Comm'r,* 362 Mich 488, 497-502; 107 NW2d 791 (1961) (BLACK, J., *dissenting);* 4 Pomeroy, Equity Jurisprudence (5th ed), part IV, group II, ch I, § III, pp 970-971.

Whether the remedy awarded is termed a writ of mandamus or a

## B

Upon appeal to the Court of Appeals, that Court granted defendant's motions for summary and accelerated judgment, correctly stating that the circuit court was without jurisdiction to conduct *original proceedings* in mental commitment cases. However, the fact that the circuit court is without jurisdiction to conduct *original* proceedings in mental commitment cases does not speak to the issue presented in this case. The Court of Appeals order fails to address plaintiff's essential averments that he was released without any review of his clinical status, and that a court has authority to require that the proper public health official make an informed decision as a condition precedent to releasing the plaintiff from hospitalization. Observing "that there may be substantial question whether there is an evidentiary basis for the release of plaintiff", the Court of Appeals remanded the case to the probate court for an evidentiary hearing and finding by the probate judge "whether

mandatory injunction, the decision to issue that relief is discretionary with the trial court. *Donovan v Guy,* 344 Mich 187, 192; 73 NW2d 471 (1955) (mandamus is a discretionary writ); *DeYoung v State Land Office Board,* 316 Mich 61, 66; 24 NW2d 424 (1946) (a writ of mandamus is a writ of grace and not a writ of right); *Livonia Drive-In Theater Co v Livonia,* 363 Mich 438, 446; 109 NW2d 837 (1961) (the remedy of mandamus is discretionary and such a writ will issue against public officials only to compel the enforcement of a clear legal duty); *Steggles v National Discount Corp,* 326 Mich 44, 50; 39 NW2d 237; 15 ALR2d 208 (1949) (mandatory injunction is largely a matter of discretion of the trial court). See, generally, 52 Am Jur 2d, Mandamus, §§ 31-42; 42 Am Jur 2d, Injunctions, §§ 24-38; 55 CJS, Mandamus, § 9; 43 CJS, Injunctions, § 14.

We do not decide, and indeed we need not decide, the preferred label for the relief awarded by the trial court. The circuit court, in its opinion from the bench, stated that the order was to be a *mandatory injunction.* We note that the relief requested by plaintiff is probably more in the nature of a mandatory injunction since the plaintiff sought injunctive relief and since the trial court's order obviously envisioned further proceedings, because the order required defendant to institutionalize plaintiff until further order of the court.

there was evidence to support the release * * * in the light of [Mr. Teasel's] full psychiatric history, whether his release constituted an abuse of discretion and for such other orders, if any be appropriate". See fn 8.

Both parties concede that the probate court is without jurisdiction to hold the hearing ordered by the Court of Appeals and lacks the power to issue any relief as contemplated by the Court of Appeals order, and we agree.

The probate court is a court of limited jurisdiction and is entirely a creature of statute. See Const 1963, art 6, § 15; *In re Kasuba Estate,* 401 Mich 560, 565-566; 258 NW2d 731 (1977). There is no authority cited, nor have we found any, for the proposition that a probate court has the power to issue general equitable relief. The Legislature has not granted mandamus powers or general equitable jurisdiction to probate courts. Although a probate court, being a court of record, does have the contempt power, MCL 600.1416 and 600.1701(3); MSA 27A.1416 and 27A.1701(3), a probate court may not, logically, adjudge defendants in contempt for that which it could not order to be done by mandamus or otherwise.

In remanding the case to the probate court for hearing, as well as in granting the defendant's motions for summary and accelerated judgments, the Court of Appeals erred.

## IV

Mr. Teasel also would have us declare that the medical soundness of the decision of the director of a mental facility to release a judicially committed patient is subject to judicial review. He asserts also that § 476 is contrary to public policy in that

it provides no judicial review whatsoever of the decisions of the Department of Mental Health in releasing hospitalized patients. Since we have held that the circuit court has jurisdiction to require that an informed decision be made whether to release a judicially committed patient, and since we are remanding to have the circuit court determine whether such decision was in fact made, we need not reach or decide this issue. It would be premature to do so. The plaintiff has alleged, and wishes the opportunity to prove, that an informed decision was not rendered by the appropriate official prior to plaintiff's release from hospitalization. We hold that he is entitled to that opportunity and that the circuit court has jurisdiction to hear and adjudicate the claim.

We reserve for another day consideration of the question whether, where such a decision is made, the judiciary is empowered to review its correctness.

## V

The judgment of the Court of Appeals, granting the defendant's motions for summary and accelerated judgment and remanding the case to the probate court for further proceedings, is vacated, as is our stay in connection therewith. The case is remanded to the Sixth Judicial Circuit Court for an evidentiary hearing at which the defendants shall have the opportunity to show whether the decision to discharge Mr. Teasel from hospitalization was an informed judgment based upon consideration and evaluation by the director of the Clinton Valley Center, or his designee, of the plaintiff's clinical status, medical record and mental health, and was otherwise made in conformity with the provisions of the Mental Health Code, particularly

§ 476, and this opinion. If the defendant makes such a showing, the plaintiff shall be discharged from hospitalization.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICK-LEY, and BOYLE, JJ., concurred with RYAN, J.

CAVANAGH, J., took no part in the decision of this case.