*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

       Plaintiff-Appellant,

v

SECRETARY OF STATE,

       Defendant-Appellee.

UNPUBLISHED
August 23, 2024

No. 372008
Court of Claims
LC No. 24-000069-MM

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this expedited election matter, plaintiff, Robert Davis, appeals as of right from the Court of Claims's August 1, 2024 opinion and order, which (as relevant here) granted defendant, Secretary of State (the "SOS"), summary disposition of all of plaintiff's remaining claims under a combination of MCR 2.116(C)(4) and (C)(8). Because the lower court properly granted the SOS summary disposition of the disputed claims, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of plaintiff's attempts to prevent the SOS from certifying two different prospective candidates—William Burton, Jr., and former Judge Kahlilia Yvette Davis—as candidates for seats on the 36th District Court on the ballot in the upcoming general election. In the trial court, plaintiff was successful with regard to the latter prospective candidate, and thus he does not challenge the lower court's rulings with regard to former Judge Davis. Rather, in his brief on appeal here, plaintiff challenges only the trial court's rulings as to his claims regarding Burton's candidacy.

Plaintiff's claims regarding Burton were first asserted as Counts IV (seeking declaratory relief) and V (seeking mandamus) in plaintiff's five-count amended verified complaint. In pertinent part, plaintiff stated the following allegations in support of those claims involving Burton:

**COUNT IV**

-1-

**Declaratory Judgment Declaring That Defendant Secretary of State, In Her Official Capacity, Has A Clear Legal Duty Under MCL 168.558(4) of Michigan Election Law Not To Certify To The Wayne County Election Commission William Burton, Jr. as a candidate for 36th District Court For The November 2024 General Election Ballot Because His Affidavit of Identity Contains A False Statement.**

89. Plaintiff incorporates, repeats and realleges the foregoing allegations as though they were fully set forth and stated herein.

90. For this count, pursuant to MCR 2.605 and MCL 24.263 and 24.264 of the Administrative Procedures Act ("APA"), [MCL 24.201 *et seq*.,] Plaintiff seeks the entry of a declaratory judgment against the Defendant Secretary of State.

91. Pursuant to MCR 2.605, an actual controversy exists between the Plaintiff and the Defendant Secretary of State.

92. On April 22, 2024, pursuant to MCL 168.467b and MCL 168.558 of Michigan Election Law, William Thomas Burton Jr. ("Mr. Burton") filed with the Defendant Secretary of State an affidavit of identity, affidavit of constitutional qualification and approximately 271 nominating petitions to qualify as a candidate for one of two non[-]incumbent positions on the 36th District Court. **(See Burton's affidavit of identity attached).**

93. MCL 24.263 of the APA provides:

**On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency.** An agency shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case. (emphasis supplied).

94. On June 6, 2024, pursuant to MCL 24.263 of the APA, Plaintiff, as resident and registered voter of the state of Michigan, submitted a[n] expedited request for a declaratory ruling to the Defendant Secretary of State concerning William Burton's apparent violation of MCL 169.233(6) of the Michigan Campaign Finance Act [(MCFA), MCL 169.201 *et seq*.] **(See Plaintiff's June 6, 2024 Request for Expedited Declaratory Ruling submitted to Defendant attached).**

95. On June 6, 2024, Defendant Secretary of State, through her Director of Elections, Jonathan Brater, issued a letter to the Plaintiff denying Plaintiff's request for the Defendant Secretary of State to issue a declaratory ruling in accordance with MCL 24.263 of the APA. **(See Defendant's June 6, 2024 Denial letter attached).**

96. As a result of the Defendant Secretary of State denying Plaintiff's request to issue a declaratory ruling in accordance with MCL 24.263 of the APA, in accordance with the Court of Appeals' holdings in *Citizens for Common Sense in Gov't v. Attorney General,* 243 Mich.App. 43, 51; 620 N.W.2d 546 (2000); and *Huron Valley Sch v Secretary of State,* 266 Mich App 638; 702 NW2d 862 (2005), Plaintiff now has standing to seek declaratory relief in this Honorable Court for this Court to declare candidate William Burton, Jr. violated MCL 169.233(6) of the Michigan Campaign Finance Act.

97. In addition to Plaintiff's request for the Defendant to issue an expedited declaratory ruling under the APA, Plaintiff also previously submitted a formal challenge to the Defendant challenging William Burton, Jr.'s affidavit of identity.

98. On May 1, 2024, Plaintiff submitted to the Defendant a challenge questioning the validity of William Burton Jr.'s affidavit of identity because Plaintiff believed it contained a false statement with respect to the candidate's compliance with the Michigan Campaign Finance Act. (See Plaintiff's May 1, 2024 challenge attached).

\* \* \*

100. On May 17, 2024, Defendant issued a letter rejecting Plaintiff's May 1, 2024 challenge to William Burton Jr.'s affidavit of identity. **(See Defendant's May 17, 2024 letter rejecting Plaintiff's challenge attached).**

\* \* \*

102. On his April 22, 2024 affidavit of identity, Mr. Burton attested to the statement that as of that date, all statements, reports, late filing fees and fines required of him and his candidate committee had been filed or paid.

103. However, that statement was **FALSE!**

\* \* \*

107. . . . [U]nder MCL 168.558(4), an officer, such as the Defendant Secretary of State, is prohibited from certifying to the Board of Election Commissioners the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information required under MCL 168.558. See *Moore v Genesee Co,* 337 Mich App 723, 730; 976 NW2d 921 (2021).

108. As will be explained in further detail below, pursuant to MCL 168.558(4), the Defendant Secretary of State cannot certify to the Wayne County Board of Election Commissioners Mr. Burton as a candidate for judge of 36th District Court for the November 2024 general election because as of April 22, 2024, Mr. Burton's candidate committee, Committee to Elect William Burton, Jr., had **failed** to file required campaign finance reports for the 2022 election cycle that accurately detailed its "expenditures" and/or "contributions" it received.

\* \* \*

118. Despite clearly receiving more than $1,000 in campaign contributions for the 2022 election cycle, **on July 20, 2022,** Mr. Burton's candidate committee filed an amended statement of organization with the Defendant Secretary of State requesting a "reporting waiver" for the 2022 election cycle.

\* \* \*

120. Pursuant to MCL 169.233(6) of the Michigan Campaign Finance Act, because . . . Mr. Burton's candidate committee clearly received and/or expended more than $1,000 during the 2022 election cycle, the reporting waiver Mr. Burton's candidate committee was **improperly** granted by the Defendant Secretary of State on July 20, 2022, was **automatically lost.** [Sic.]

\* \* \*

126. Accordingly, Mr. Burton falsely attested on his April 2024 affidavit of identity with respect to his candidate committee's compliance with the filing requirements of the Michigan Campaign Finance Act.

**WHEREFORE**, Plaintiff requests this Honorable Court enters judgment and grants the following relief against the Defendant Secretary of State, as follows:

a. Enter a declaratory judgment declaring that the Defendant Secretary of State has a clear legal duty under MCL 168.558(4) **not** to certify to the Wayne County Election Commission the name of William Burton Jr. to appear on the November 2024 general election ballot as a judicial candidate for judge of the 36th District Court non-incumbent position because William Burton Jr.'s affidavit of identity contains a false statement with respect to his candidate committee's compliance with the filing requirements of the Michigan Campaign Finance Act.

b. Enter a declaratory judgment declaring that pursuant to MCL 169.233(6) of the Michigan Campaign Finance Act, the Committee to Elect William Burton Jr. should not have been granted a reporting waiver for the 2022 election cycle and it automatically lost the reporting waiver the Defendant Secretary of State improperly granted because the candidate committee received and/or expended more than a $1,000 during the 2022 election cycle.

-4-

c. Enter a declaratory judgment declaring that pursuant to MCL 169.233(1)(a),[](b) and (2)(a),[](b) and (6) of the Michigan Campaign Finance Act, the Committee to Elect William Burton, Jr. was required to file campaign finance reports in the year 2022 showing contributions and expenditures . . . .

d. Enter a declaratory judgment declaring that the Defendant Secretary of State's certification of William Burton Jr. to the Wayne County Election Commission as a candidate for judge of the 36th District Court for the November 2024 general election is **VOID** and **UNENFORCEABLE** because William Burton Jr.'s affidavit of identity contains a false statement in violation of MCL 168.558(4).

\* \* \*

## COUNT V

**Writ of Mandamus Compelling Defendant Secretary of State Not To Certify And/Or Decertify William Burton, Jr. As A Candidate For Judge of 36th District Court For the November 2024 General Election.**

127. Plaintiff incorporates, repeats and realleges the foregoing allegations as though they were fully set forth and stated herein.

128. For this count, pursuant to MCR 3.305, Plaintiff seeks the entry of a writ of mandamus against the Defendant Secretary of State, in her official capacity.

129. "A writ of mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Davis v Secretary of State*, ___Mich.App.___, ___;___ NW2d___ (2023) (Docket No. 362841); slip op at p 9, citing *Attorney General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016).

\* \* \*

134. The Defendant Secretary of State has a clear legal duty not to certify candidates who have submitted affidavits of identity that do not strictly comply with the mandatory requirements of MCL 168.558. *Davis v Secretary of State*, ___ Mich.App.___, ___;___NW2d ___ (2023) (Docket No. 362841); slip op at pp 9-11; *Berry v Garrett,* 316 Mich App 37, 42; 890 NW2d 882 (2016); *Moore v Genesee County,* 337 Mich.App. 723, ___; 976 NW2d 921, 925 (2021).

\* \* \*

136. Lastly, other than filing the instant action, Plaintiff has no adequate remedy at law to ensure only qualified candidates that have strictly complied with the requirements of MCL 168.558 are on the November 2024 general election ballot for the office of judge of the 36th District Court.

**WHEREFORE**, Plaintiff requests this Honorable Court enters judgment and grants the following relief against the Defendant Secretary of State, in her official capacity, as follows:

a. Enter a writ of mandamus compelling the Defendant Secretary of State not to certify and/or decertify William Burton, Jr. as a candidate for judge of the 36th District Court for the November 2024 general election because his affidavit of identity does not comply with MCL 168.558 and/or it contains a false statement in violation of MCL 1687.558(4). [Footnotes omitted; emphases and record citations in original; some alterations in original.]

The SOS subsequently moved for summary disposition of those two claims under MCR 2.116(C)(4), (C)(8), "and/or" (C)(10), arguing that the Court of Claims lacked jurisdiction over such claims as a result of plaintiff's failure to exhaust his administrative remedies. Specifically, the SOS argued that (1) under § 15(17) of the MCFA, MCL 169.215(17), as construed in binding precedent such as *Huron Valley Sch v Secretary of State*, 266 Mich App 638; 702 NW2d 862 (2005) (*Huron Valley*), and *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43; 620 NW2d 546 (2000) (*Citizens for Common Sense*), the SOS has exclusive jurisdiction to entertain actions seeking to enforce the MCFA; (2) hence, in this case, "the administrative complaint process described within subsections 15(5) through (12) of the MCFA, MCL 169.215(5)-(12), provide[d] the exclusive means by which Plaintiff c[ould] seek to compel compliance with the Act by Burton"; (3) indeed, plaintiff had admittedly filed an administrative complaint in the SOS—based on the same essential allegations at issue here—which was then still pending, being actively investigated by the SOS, and "being processed according to the" MCFA, "which sets out timelines and a response and resolution process"; (4) that administrative process could yet "be resolved in a number of ways"; and (5) in any event, because plaintiff had not yet exhausted that administrative process, his instant claims involving Burton's candidacy should be dismissed for lack of jurisdiction.

In response, plaintiff argued that the trial court did, in fact, have jurisdiction over the disputed claims, further contending that, instead of granting the SOS summary disposition of those claims, the court should instead grant him judgment as a matter of law under MCR 2.116(I)(2). As relevant here, apropos of the SOS's jurisdictional argument, plaintiff argued that (1) "on June 6, 2024, Defendant Secretary of State, through her Director of Elections, Jonathan Brater, issued a letter to the Plaintiff denying Plaintiff's request . . . to issue a declaratory ruling in accordance with MCL 24.263 of the APA"; (2) in light of Brater's denial letter, plaintiff had immediately been vested with standing to seek a declaratory ruling in the trial court pursuant to MCL 24.264, as recognized in the very same decisions cited by the SOS—namely, *Huron Valley* and *Citizens for Common Sense*; (3) regardless, "pursuant to MCL 168.558(4) of Michigan Election Law, th[e] Court ha[d] jurisdiction to determine and declare whether Candidate Burton's affidavit of identity contain[ed] a false statement in violation of MCL 168.558(4)"; and (4) plaintiff's subsequent filing of an administrative complaint with the SOS was immaterial for the instant purposes because, as this Court recognized in *Huron Valley*, 266 Mich App at 647, any determination reached by the SOS in that administrative process "would not constitute a 'decision' and would not resolve the issues presented in this case because the [SOS] only indicates whether she believes a violation of the Michigan Campaign Finance Act *may* have occurred" in resolving such administrative complaints.

In reply, the SOS argued that plaintiff's attempt to "use the APA to make an end-run around the MCFA" was fatally flawed "for at least three reasons": (1) MCL 24.264 only permits parties to seek declaratory relief "as to the 'validity or applicability of a *rule*,' " and in this action, plaintiff was not seeking a declaration regarding the applicability or validity of an administrative rule but was instead asking the trial court "to apply the *statutes* in the MCFA to a particular set of facts" and affirmatively hold that a statutory violation had occurred (emphasis added); (2) regardless, judicial review under MCL 24.264 is, by that statute's own terms, unavailable if "an exclusive procedure or remedy is provided by a statute governing the agency," and here such an procedure is, in fact, mandated under the MCFA at MCL 169.215(17); and (3) to seek declaratory relief under MCL 24.264, a party must demonstrate "that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the" party, and plaintiff had neither made such a showing nor even alleged that a specific "rule or its threatened application" would affect his legal rights and privileges.

Following oral argument, the trial court evidently[1] invited "the parties to submit supplemental briefing on the issue of whether the court had jurisdiction to determine whether certain campaign finance reports were 'required of' judicial candidate William Burton Jr.'s candidate committee on the date in which he signed his affidavit of identity for the 2024 election cycle." Plaintiff subsequently did so, arguing that the court did, in fact, have jurisdiction to consider and decide that question. As authority in support, plaintiff cited *Reed-Pratt v Detroit City Clerk*, 339 Mich App 510; 984 NW2d 794 (2021), in which this Court affirmed a trial court's decision to deny a request for a declaratory judgment concerning whether the Detroit City Clerk had a duty to not certify a candidate for inclusion on the ballot based on alleged false statements in the candidate's AOI, which were in turn related to the filing of amended campaign finance reports purportedly required under the MCFA. Plaintiff's tacit argument was that, because the *Reed-Pratt* Court analyzed whether the filing of certain amended reports might have been required under the MCFA, it necessarily followed that this Court (and the trial court) must have had proper jurisdiction to do so in that case, which suggested that the same would be true here, as well.

After considering the matter, the Court of Claims granted the SOS summary disposition, reasoning:

> Just this morning, Court of Claims Judge Brock A. Swartzle rendered an opinion and order agreeing with the SOS that Plaintiff Davis (in a suit seeking to disqualify other judicial candidates) must "exhaust the administrative process before seeking judicial review" of MCFA claims. *Davis v Benson,* unpublished opinion of the Court of Claims, issued August 1, 2024 (Docket No. 24-95-MB), p.

---

[1] Plaintiff has failed to provide this Court with a copy of the relevant motion-hearing transcript. Given the exigencies of this election matter, the applicable standard of review, and the existence of an opinion explaining the trial court's reasoning, we have elected to overlook plaintiff's failure to comply with MCR 7.210(B)(1)(a) in this regard. In the future, however, he would be well advised to strictly comply with the court rules regarding production of the full record on appeal—failure to do so might lead a panel of this Court to deem issues either waived or abandoned.

9.[2]  In that case, just as in this case, Plaintiff Davis sought disqualification based upon the claim that a judicial candidate's affidavit of identity (AOI) was false because of a violation of the MCFA.  *Id.*  But Judge Swartzle explained that "[p]laintiff cannot bring an action in this Court to obtain a declaration that [a judicial candidate] has violated or is in violation of the MCFA" because "[t]he MCFA expressly provides that there is no private right of action under the MCFA. MCL 169.215(17); see also *Huron Valley Sch v Secretary of State*, 266 Mich App 638,646; 702 NW2d 862 (2005)."  *Id.*  Instead, "[t]he administrative-complaint process under MCL 169.215(5) through (12) of the MCFA provides the exclusive means by which plaintiff can seek to compel compliance with the MCFA."  *Id.* Here, just as in that case, "[p]laintiff must exhaust the administrative process before seeking judicial review.  See *Huron Valley Sch ,* 266 Mich App at 645-646."  *Id.* And here, just as in that case, "[p]laintiff failed to exhaust his administrative remedies and, therefore, Count IV of his complaint must be dismissed for lack of jurisdiction."  Thus, the Court cannot reach the merits of Plaintiff Davis's challenge to Mr. Burton's AOI.  Instead, the Court must award the SOS summary disposition under MCR 2.116(C)(4) on Count IV of Plaintiff Davis's amended verified complaint and dismiss that claim without prejudice.  For the very same reason, Plaintiff Davis is not entitled to mandamus as requested in Count V of the amended verified complaint, so the Court shall grant the SOS summary disposition under MCR 2.116(C)(8) on that claim because Plaintiff Davis cannot establish a right to the extraordinary relief he seeks in light of his failure to exhaust his administrative remedies.  [All alterations in original except for bracketed footnote.]

The instant appeal ensued.

## II.  ANALYSIS

For the reasons stated by the Court of Claims, we agree that the SOS was entitled to summary disposition of both of plaintiff's disputed claims.

A trial court's ruling regarding a motion for summary disposition is reviewed de novo. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009).  As noted, the trial court cited MCR 2.116(C)(4) and (C)(8) as the respective grounds under which it granted the SOS summary disposition of plaintiff's claim for declaratory relief (i.e., Count IV in the amended verified complaint) and his claim for a writ of mandamus (i.e., Count V is that same complaint).

"Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to exhaust its administrative remedies."  *Citizens for Common Sense*, 243 Mich App at 50.  "In considering a motion challenging jurisdiction under MCR 2.116(C)(4), a court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate that the court lacks subject matter jurisdiction.  MCR

---

[2] Plaintiff has also claimed an appeal from that cited opinion and order, but he has not yet moved to expedite that case.  See Docket No. 371928, *Davis v Secretary of State*.

2.116(G)(5)." *CC Mid West, Inc v McDougall*, 470 Mich 878 (2004). On the other hand, as our Supreme Court explained in *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999):

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [Quotation marks and citations omitted.]

Several statutes are of prime import in this case and merit quotation at the outset. In pertinent part, MCL 169.215 provides:

> (1) The secretary of state shall do all of the following:
>
> \* \* \*
>
> (e) Promulgate rules and issue declaratory rulings to implement this act in accordance with the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328.[3]
>
> \* \* \*
>
> (2) A declaratory ruling shall be issued under this section only if the person requesting the ruling has provided a reasonably complete statement of facts necessary for the ruling or if the person requesting the ruling has, with the permission of the secretary of state, supplied supplemental facts necessary for the ruling. . . . Except as otherwise provided in this section, the secretary of state shall issue a declaratory ruling within 60 business days after a request for a declaratory ruling is received. *If the secretary of state refuses to issue a declaratory ruling, the secretary of state shall notify the person making the request of the reasons for the refusal* and shall issue an interpretative statement providing an informational response to the question presented within the same time limitation applicable to a declaratory ruling. A declaratory ruling or interpretative statement issued under this section shall not state a general rule of law, other than that which is stated in this act, until the general rule of law is promulgated by the secretary of state as a

---

[3] Several relevant administrative rules have been promulgated at Mich Admin Code R 169.1, *et seq.*, including rules governing how administrative complaints may be filed with the SOS under the MCFA, see Rule 169.51, and setting forth the required form and contents of such complaints, see Rule 169.52. Administrative rules have also been promulgated concerning the disqualification of candidates from the ballot based on the contents of their AOI. See Mich Admin Code R 168.1, *et seq.*

rule under the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, or under judicial order.

\* \* \*

(5) A person may file with the secretary of state a complaint that alleges a violation of this act. Within 5 business days after a complaint that meets the requirements of subsection (6) is filed, the secretary of state shall give notice to the person against whom the complaint is filed. The notice shall include a copy of the complaint. Within 15 business days after this notice is mailed, the person against whom the complaint was filed may submit a response to the secretary of state. The secretary of state may extend the period for submitting a response an additional 15 business days for good cause. The secretary of state shall provide a copy of a response received to the complainant. Within 10 business days after the response is mailed, the complainant may submit a rebuttal statement to the secretary of state. The secretary of state may extend the period for submitting a rebuttal statement an additional 10 business days for good cause. The secretary of state shall provide a copy of the rebuttal statement to the person against whom the complaint was filed.

(6) A complaint filed under subsection (5) shall satisfy all of the following requirements:

\* \* \*

(7) The secretary of state shall develop a form that satisfies the requirements of subsection (6) and may be used for the filing of complaints.

\* \* \*

(9) The secretary of state shall investigate the allegations under the rules promulgated under this act. . . .

(10) No later than 45 business days after receipt of a rebuttal statement submitted under subsection (5), or if no response or rebuttal is received under subsection (5), the secretary of state shall post on the secretary of state's Internet website whether or not there *may be reason to believe that a violation of this act has occurred*. When the secretary of state determines whether there may be reason to believe that a violation of this act occurred or did not occur or determines to terminate its proceedings, the secretary of state shall, within 30 days of that determination, post on the secretary of state's Internet website any complaint, response, or rebuttal statement received under subsection (5) regarding that violation or alleged violation and any correspondence that is dispositive of that violation or alleged violation between the secretary of state and the complainant or the person against whom the complaint was filed. *If the secretary of state determines that there may be reason to believe that a violation of this act occurred, the secretary of state shall endeavor to correct the violation or prevent a further violation by using informal methods such as a conference, conciliation, or persuasion, and may enter into a conciliation agreement with the person involved.*

Unless violated, a conciliation agreement is a complete bar to any further civil or criminal action with respect to matters covered in the conciliation agreement. The secretary of state shall, within 30 days after a conciliation agreement is signed, post that agreement on the secretary of state's Internet website. *If, after 90 business days, the secretary of state is unable to correct or prevent further violation by these informal methods, the secretary of state shall do either of the following*:

(a) Refer the matter to the attorney general for the enforcement of any criminal penalty provided by this act.

(b) Commence a hearing as provided in subsection (11) for enforcement of any civil violation.

(11) The secretary of state may commence a hearing to determine whether a civil violation of this act has occurred. The hearing shall be conducted in accordance with the procedures set forth in chapter 4 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.271 to 24.287. *If after a hearing the secretary of state determines that a violation of this act has occurred*, the secretary of state may issue an order requiring the person to pay a civil fine not more than triple the amount of the improper contribution or expenditure plus not more than $1,000.00 for each violation.

(12) A final decision and order issued by the secretary of state is subject to judicial review as provided by chapter 6 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.301 to 24.306. . . .

(13) When a report or statement is filed under this act, the secretary of state shall review the report or statement and may investigate an apparent violation of this act under the rules promulgated under this act. *If the secretary of state determines that there may be reason to believe a violation of this act has occurred and the procedures prescribed in subsection (10) have been complied with*, the secretary of state may refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act, *or commence a hearing under subsection (11) to determine whether a civil violation of this act has occurred*.

\* \* \*

(17) Except as otherwise provided in section 57 [i.e., MCL 169.257[4]], *there is no private right of action, either in law or in equity, under this act*. Except as otherwise provided in section 57, *the remedies provided in this act are the exclusive*

---

[4] Plaintiff does not argue that the exceptions in MCL 169.257 apply here, and it appears that that provision is inapplicable because it generally regards the use of public resources for campaign purposes by a public body or person.

*means by which this act may be enforced and by which any harm resulting from a violation of this act may be redressed. . . .* [Emphasis added.]

In addition, MCL 24.263 provides:

> On request of an interested person, an agency *may* issue a declaratory ruling as to the *applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency*. An agency *shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition*. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case. [Emphasis added.]

On the other hand, MCL 24.264 provides:

> *Unless an exclusive procedure or remedy is provided by a statute governing the agency*, the validity or applicability of a *rule*, including the failure of an agency to accurately assess the impact of the *rule* on businesses, including small businesses, in its regulatory impact statement, may be determined in an action for declaratory judgment *if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff*. The action shall be filed in the circuit court of the county where the plaintiff resides or has his or her principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously. *This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted*. [Emphasis added.]

Given plaintiff's admissions below that he had, in fact, filed an administrative complaint that remained pending before the SOS—regarding the same essential alleged MCFA violations at issue in this action—the SOS was entitled to summary disposition of his claim seeking a writ of mandamus. See *Powers v Dignan*, 309 Mich 530, 533; 16 NW2d 62 (1944) ("Powers' petition for a writ of mandamus must be denied without prejudice, pending a formal administrative hearing on the charges . . . because mandamus is not a writ of right but of grace and discretion, and will not lie to compel a public officer to perform a duty dependent upon disputed and doubtful facts."); *WA Foote Mem Hosp v Dep't of Pub Health*, 210 Mich App 516, 524-525; 534 NW2d 206 (1995) ("the trial court erred in denying defendant's motion for summary disposition because plaintiffs failed to exhaust their administrative remedies"); *Tuscola Co Abstract Co, Inc v Tuscola Co Register of Deeds*, 206 Mich App 508, 510; 522 NW2d 686 (1994) ("Mandamus is an extraordinary remedy and is appropriate only when there is no other remedy, legal or equitable, that might achieve the same result."). See also *Teasel v Dep't of Mental Health*, 419 Mich 390,

410; 355 NW2d 75 (1984) (holding that mandamus "will not lie for the purpose of reviewing, revising, or controlling the exercise of discretion reposed in administrative bodies").

Nor are we persuaded by plaintiff's arguments that, with regard to both of his disputed claims, the pending administrative-complaint process under MCL 169.215(5) does not afford him an adequate remedy. In support of that proposition, plaintiff primarily relies on *Huron Valley*, 266 Mich App at 647, in which this Court held that the defendant in that case—again, the SOS—had not rendered a "campaign finance decision" by sending a letter "indicating that she had reason to believe that violations of § 57 of the MCFA were occurring." This Court further held:

> The letter further warned that *if* a violation were ultimately determined after a hearing, sanctions would follow. Thus, in order to properly challenge defendant's interpretation of the MCFA, plaintiffs should have first made a request for a declaratory ruling under § 15(2) [i.e., former[5] MCL 169.215(2)]. If defendant refused to make such a ruling, then plaintiff could have sought a declaratory judgment in the circuit court. Further, if defendant made a declaratory ruling that plaintiffs disagreed with, then plaintiffs could have sought review of that ruling in the circuit court. Because [former] § 15(16) of the MCFA states that there is no private cause of action in law or equity, plaintiffs' declaratory judgment action is precluded. [*Huron Valley*, 266 Mich App at 647 (citation omitted).]

Based on the above-quoted passage, in the trial court, plaintiff argued that any determination reached by the SOS in the pending administrative process "would not constitute a 'decision' and would not resolve the issues presented in this case because the [SOS] only indicates whether she believes a violation of the [MCFA] *may* have occurred[.]" But aside from ignoring the factual differences between this case and *Huron Valley*—and conflating the "declaratory ruling" process under MCL 169.215(2) with the distinct administrative "complaint" process described in subsection (5) of that statute (and some of the subsections that follow it)—plaintiff's argument in this regard is founded on the fallacious presupposition that because a prior SOS acted in a certain way in response to a different factual scenario in the past, it follows that the current SOS will act in the same way when responding to a different factual scenario. And although it is true that, after investigating the allegations in the administrative complaint, the SOS will initially be required to "post on the secretary of state's Internet website whether or not there *may* be reason to believe that a violation of this act has occurred," see MCL 169.215(10) (emphasis added), plaintiff fails to recognize that, in such an event, that same subsection also requires the SOS to take certain additional affirmative steps. First, "[i]f the secretary of state determines that there may be reason to believe that a violation of this act occurred, the secretary of state shall endeavor to correct the violation or prevent a further violation by using informal methods such as a conference, conciliation, or persuasion, and may enter into a conciliation agreement with the person involved." MCL 169.215(10). And "[i]f, after 90 business days, the secretary of state is unable to correct or

---

[5] After *Huron Valley* was decided in 2005, MCL 169.215 was been amended in ways that are, except as otherwise noted in this opinion, seemingly irrelevant to the analysis here, though it bears mention that the amendments altered the numbering of some of the subsections as cited in *Huron Valley*. See 2012 PA 31; 2012 PA 277; 2015 PA 269.

-13-

prevent further violation by these informal methods, the secretary of state shall" either refer the matter to the Attorney General for enforcement of criminal penalties or "[c]ommence a hearing as provided in subsection (11) for enforcement of any civil violation." MCL 169.215(10). After holding such a hearing, the SOS can take certain enforcement actions directly if she "determines that a violation of this act has occurred[.]" MCL 169.215(11). Thus, contrary to plaintiff's arguments, the pending administrative process will *not* necessarily end with the SOS merely issuing an informal statement regarding whether there is reason to believe that a violation of the MCFA "may" have occurred. Rather, the process could instead end with the SOS finding that a violation *did* occur and then taking active steps to enforce the MCFA.

In addition, although it is true that the timeline for handling such administrative complaints, as set forth under MCL 169.215(5) and (10), is fairly protracted, and it is also true that changes to the applicable timeline have been made since *Huron Valley* was decided,[6] "time sensitivity and futility are not exceptions to the MCFA's administrative procedures." See *Huron Valley*, 266 Mich App at 647. On the contrary, as this Court explained in *Huron Valley*, 266 Mich App at 648:

> The plain language of [former] § 15(16) of the MCFA provides that the remedies afforded by the act "are the *exclusive* means by which this act may be enforced . . . ." (Emphasis added). Even if plaintiffs' claims of time sensitivity or futility had merit, the MCFA nonetheless clearly requires plaintiffs to exhaust their administrative remedies before seeking review in the courts. [Ellipsis in original.]

Accord *Citizens for Common Sense*, 243 Mich App at 54. Given that the *operative* statutory language remains the same, we conclude that we are bound to follow that rule of law. See MCR 7.215(J)(1).

Given plaintiff's failure to exhaust his administrative remedies under the MCFA, we also find his arguments regarding the APA to be unavailing. Put simply, even assuming, arguendo, that plaintiff is correct—i.e., that despite MCL 169.215(17)'s plain language specifying that proceedings under the MCFA represent the "exclusive means by which th[e] act may be enforced and by which any harm resulting from a violation . . . may be redressed," the Court of Claims would nevertheless somehow have jurisdiction under the APA to issue a declaratory ruling about the proper interpretation of the MCFA as it applies in this particular case—it does not follow that it would have been proper for the Court of Claims to *exercise* such jurisdiction before plaintiff exhausted his administrative remedies. See *Citizens for Common Sense*, 243 Mich App at 50 ("The circuit courts of this state have subject-matter jurisdiction to issue declaratory rulings, injunctions, or writs of mandamus. However, if the Legislature has expressed an intent to make an administrative tribunal's jurisdiction exclusive, then the circuit court cannot *exercise* jurisdiction over those same areas.") (citations omitted and emphasis added).

For that same basic reason, we are not persuaded by plaintiff's attempts to rely on *Reed-Pratt* as authority for the proposition that it would have been proper for the Court of Claims to exercise jurisdiction over the disputed claims. Again, plaintiff conflates the question of whether

---

[6] See 2012 PA 277 (adding certain timing requirements to MCL 169.215(10)); 2015 PA 269 (further amending the timing requirements under subsection (10)).

the Court of Claims has subject-matter jurisdiction over claims like the ones in dispute here—i.e., "the abstract power to try a case of the kind or character of the one pending," *Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992) (quotation marks and citation omitted)—with the distinct question of whether it would be appropriate for the Court of Claims to *exercise* jurisdiction in this case despite plaintiff's failure to exhaust his administrative remedies. Plaintiff also fails to recognize that *Reed-Pratt* is materially distinguishable from the instant case in several respects. Among other things, the SOS was not a party to the action in *Reed-Pratt*, the action was filed in circuit court (not the Court of Claims), and because the parties raised no argument in this Court as to whether the plaintiff had duly exhausted her administrative remedies under the MCFA, this Court neither addressed nor decided that issue. Moreover, as this Court noted in *Reed-Pratt*, 339 Mich App at 514 n 1, in that case, there was evidence suggesting that the plaintiff had "filed a request with the Secretary of State and the State Director of Elections" related to the claims at issue, and the SOS and Director of Elections did not timely respond. In contrast, here plaintiff admits that the Director of Elections did respond to his initial inquiry, directing him to file an administrative complaint; that plaintiff subsequently did so; and that the administrative-complaint process remained pending at the time the Court of Claims issued its disputed decision. Put differently, plaintiff simply misunderstands the nature of what this Court held—and more importantly did *not* hold—in *Reed-Pratt*.

For all of those reasons, we perceive no error in the lower court's disputed holdings, let alone any error that might warrant reversal.

Affirmed.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica