*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SENATE and SENATE MAJORITY LEADER,

           Plaintiffs-Appellees/Cross-Appellants,

v

HOUSE OF REPRESENTATIVES and HOUSE CLERK,

           Defendants-Appellants/Cross-Appellees,

and

HOUSE SPEAKER,

           Defendant.

FOR PUBLICATION
October 27, 2025
12:10 PM

No. 374786
Court of Claims
LC No. 25-000014-MB

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

CAMERON, P.J.

Defendants, the House of Representatives and House Clerk,[1] appeal the order of the Court of Claims granting summary disposition, in part, and denying, in part, as to both defendants' and plaintiffs', the Senate's and Senate Majority Leader's, motions for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).[2] Plaintiffs cross-appeal the same order.

---

[1] The Court of Claims held that the House Speaker was privileged from this lawsuit under Const 1963, art 4, § 11, and this decision is not challenged on appeal. For simplicity, this opinion will refer to defendants-appellees as "defendants."

[2] Defendants also moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim), but the Court of Claims considered both motions under MCR 2.116(C)(10).

For the reasons set forth in this opinion, we reverse and remand for the Court of Claims to issue a writ of mandamus ordering defendants to present the bills at issue to the Governor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts giving rise to this case are not in dispute. The Michigan Legislature is made up of two chambers: the House of Representatives and the Senate. Const 1963, art 4, § 1. Legislative sessions are split into two-year increments, with new sessions ending in odd-numbered years following elections in November in even-numbered years. *Id*. Each new legislative session is numbered sequentially after its predecessor. The previous Legislature—the 102nd Legislature—passed various bills in both chambers before ending its term. When the 103rd Legislature convened for its first session, nine bills from the 102nd Legislature had not yet been presented to the Governor for approval. All nine bills originated in the House of Representatives; thus, per legislative rules, they were to be presented to the Governor by the House Clerk. After defendants failed to present the bills to the Governor, the Senate passed a resolution authorizing the initiation of this lawsuit.

In their complaint, plaintiffs sought a declaratory judgment that Const 1963, art 4, § 33, which provides that "[e]very bill passed by the legislature shall be presented to the Governor before it becomes law," required defendants to present the bills to the Governor, and requested the Court of Claims issue a writ of mandamus and permanent injunction compelling defendants to do so. Both parties then moved for summary disposition. The issues before the Court of Claims included whether: (1) plaintiffs had standing; (2) the issue was a nonjusticiable political question; (3) our Constitution mandated that defendants present the bills to the Governor; and (4) the Court of Claims had the authority to enter a declaratory judgment or to issue a writ of mandamus or permanent injunction.

The Court of Claims granted partial summary disposition to each party. It granted plaintiffs relief to the extent that it entered a declaratory judgment "declaring that Article 4, § 33, of Michigan's 1963 Constitution requires that all bills passed by the Legislature be presented to the governor . . . ." Recognizing that the constitutional provision at issue did not indicate a specific time frame, the Court of Claims declared that all passed bills must be presented "in sufficient time to allow [the Governor] 14 days to review the bills prior to the earliest date that the legislation may take effect under Article 4, § 27, of Michigan's 1963 Constitution."[3] The Court of Claims denied plaintiffs' motion to issue a writ of mandamus or permanent injunction, because it concluded that the duty to present the bills was not ministerial, and a permanent injunction was not appropriate. The Court of Claims held that both plaintiffs had standing, concluding that their alleged injuries were "distinct from the public at large" because they voted in favor of the bills that have not been presented to the Governor. It further held that this case was justiciable and did not implicate the political-question doctrine because the issue in this case concerned constitutional interpretation, an area in which Michigan's courts maintain primacy. The parties now appeal.

---

[3] Const 1963, art 4, § 27 provides, in pertinent part, that "[n]o act shall take effect until the expiration of 90 days from the end of the session at which it was passed[.]"

II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on summary disposition. *Tripp v Baker*, 346 Mich App 257, 272; 12 NW3d 45 (2023). A motion is properly granted pursuant to MCR 2.116(C)(10) "when the proffered evidence fails to establish a genuine question of fact." *Tripp*, 346 Mich App at 262. This Court must review "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. (quotation marks and citation omitted). This Court similarly reviews constitutional issues and issues of standing de novo. *Pego v Karamo*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 371299); slip op at 5; *In re Knight*, 333 Mich App 681, 686; 963 NW2d 676 (2020).

Discretionary actions, however, such as a trial court's decision concerning a writ of mandamus or injunctive relief, are reviewed for an abuse of discretion. *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 177-178; 988 NW2d 841 (2022); *In re Brosamer Guardianship*, 328 Mich App 267, 275; 936 NW2d 870 (2019). A court "abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Brosamer Guardianship*, 328 Mich App at 275. "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

III. STANDING

Defendants first argue that plaintiffs lack standing. We disagree.

Generally, "standing requires a party to have a sufficient interest in the outcome of litigation to ensure vigorous advocacy and in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *In re Knight*, 333 Mich App at 688 (citation omitted). But as it pertains to the Legislature, standing is a more "complicated issue." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 592; 957 NW2d 731 (2020). As our Supreme Court has explained:

> Views on legislative standing are wide-ranging, with those such as the late Justice Scalia on the one hand, who vehemently opposed expansion of legislative standing as an encroachment on the separation of powers. On the other hand are views such as those of Justice Alito, who would conclude that "in the narrow category of cases in which a court strikes down an Act of Congress and the Executive declines to defend the Act, Congress both has standing to defend the undefended statute and is a proper party to do so." And of course there are views in the middle, such as those expressed by the United States Supreme Court in *Coleman v Miller*,[4] in which the Court held that members of the Legislature had standing when their votes had "been overridden and virtually held for naught[,] although if they are right in their contentions their votes would have been sufficient to defeat ratification." [*League*

---

[4] *Coleman v Miller*, 307 US 433; 59 S Ct 972; 83 L Ed 1385 (1939).

*of Women Voters*, 506 Mich at 592-594 (citations omitted; second alteration in *League of Women Voters*).]

The United States Supreme Court later held that *Coleman*'s holding gave standing to "legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act . . . if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *League of Women Voters*, 506 Mich at 594 n 53, quoting *Raines v Byrd*, 521 US 811, 823; 117 S Ct 2312; 138 L Ed 2d 849 (1997) (quotation marks omitted). Our Supreme Court, however, recognized that this nullification rule only applies in certain circumstances. It reasoned that "[i]t would be imprudent and violative of the doctrine of separation of powers to confer standing upon a legislator simply for failing in the political process[.]" *House Speaker v State Admin Bd*, 441 Mich 547, 555; 495 NW2d 539 (1993) (*House Speaker I*). Therefore, "plaintiffs who sue as legislators must assert more than a generalized grievance that the law is not being followed[;]" instead they "must establish that they have been deprived of a personal and legally cognizable interest peculiar to [them]." *Id*. (quotation marks and citations omitted, second alteration in *House Speaker I*).

We agree with the Court of Claims that plaintiffs demonstrated sufficient, distinct injuries to have standing. Both plaintiffs—the Senate and the Senate Majority Leader—voted in favor of the nine bills at issue. The House of Representatives also voted in favor of these bills, meaning that the next step in the process was presentment to the Governor. Plaintiffs argued that defendants' decision to not present the bills, when the legislative rules establish it was their burden to do so, interfered with their own, unique right to fulfill their duty as legislators. This was a special injury different from the public at large. *In re Knight*, 333 Mich App at 688.

We find defendants' reliance on *Killeen v Wayne Co Rd Comm*, 137 Mich App 178; 357 NW2d 851 (1984), unpersuasive. Unlike this case, *Killeen* concerned a group of plaintiffs whose votes had "been counted, and their legislative work-product enacted[.]" *Id*. at 189. Therefore, the plaintiffs in *Killeen* no longer had any "special interest as lawmakers[,]" because the legislation at issue had passed. *Id*. In this case, plaintiffs' interests had not extinguished, because their votes, which were sufficient to enact a specific legislative act, were nullified by defendants' refusal to present the bills to the Governor. *League of Women Voters*, 506 Mich at 594 n 53. Whether the Governor will sign the bills once presented is irrelevant; defendants' actions have forestalled legislation, supported by plaintiffs and approved by both chambers, from being presented to the Governor. Thus, plaintiffs have standing to sue. See *id*.

## IV. JUSTICIABILITY

Defendants next argue the Court of Claims erred by determining that this case was justiciable. We disagree.

"Michigan's courts are limited to deciding actual cases and controversies." *Pego*, ___ Mich App at ___; slip op at 10. "If a dispute is not justiciable, then it is not an actual case or controversy." *Id*. The political-question doctrine "is rooted in the separation of powers inherent in divided government." *Id*. But "[o]ur Supreme Court clarified that the mere fact that a case involves political issues [is] not determinative of the need to defer to the political branches." *Id*. at ___; slip op at 11. This is because the political-question doctrine concerns just that—questions,

-4-

not cases. *Id*. In Michigan, we evaluate whether a case is nonjusticiable under the political-question doctrine by analyzing three queries:

> (i) Does the issue involve resolution of questions committed by the text of the Constitution to a coordinate branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations [for maintaining respect between the three branches] counsel against judicial intervention? [*Id.*, quoting *House Speaker v Governor*, 443 Mich 560, 574; 506 NW2d 190 (1993) (*House Speaker II*) (quotation marks omitted; alteration in *House Speaker II*).]

The first inquiry—whether "the issue involve[s] resolution of questions committed by the text of the Constitution to a coordinate branch of government[,]"—examines "whether the Constitution or other law clearly delegates resolution of the dispute to a different branch." *Pego*, ___ Mich at ___; slip op at 11 (quotation marks and citation omitted). In other words, we must consider whether the constitutional provision at issue specifies that a branch other than the judiciary is responsible for resolving issues that arise under its language; in this case, the Legislature. This is because the judiciary "has not only the authority, but also the primary responsibility of interpreting and enforcing our Constitution." *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 692; 983 NW2d 855 (2022).

The specific provision at issue here is Const 1963, art 4, § 33. It provides, in relevant part: "Every bill passed by the legislature shall be presented to the governor before it becomes law, and the governor shall have 14 days measured in hours and minutes from the time of presentation in which to consider it." The Court of Claims reasoned that this section did not commit its interpretation to another branch of government. Defendants argue that while the provision does not commit its interpretation to another branch, "the opposite is also true." That is, defendants contend that the provision's silence means it does not commit its interpretation to a branch *other than* the Legislature, because the provision itself involves legislative activity. It is certainly true that our Constitution authorizes each legislative chamber to "choose its own officers and determine the rules of its proceedings[,]" Const 1963, art 4, § 16, and prohibits individual branches of government from "exercis[ing] powers properly belonging to another branch[,]" Const 1963, art 3, § 2. But these provisions are not implicated here. The issue in this case is the *interpretation* of Const 1963, art 4, § 33, not a challenge to defendants' power to legislate or set their own rules. Because Const 1963, art 4, § 33, does not delegate the resolution of a dispute arising under its language to the Legislature, this necessarily means that the interpretation of Const 1963, art 4, § 33 falls to the judiciary. See *Pego*, ___ Mich at ___; slip op at 11; see also *Bauserman*, 509 Mich at 692.

Defendants rely on *Gilbert v Gladden*, 87 NJ 275, 278-279; 432 A2d 1351 (1981), a case in which the New Jersey Supreme Court held that an almost identical constitutional provision presented a nonjusticiable political question. *Gilbert* determined that the issue of presentment fell entirely to the Legislature because there was no time frame provided in the constitutional provision at issue. While we recognize the reasoning in *Gilbert*, however, we are not bound by it. See *Lewis v Farmers Ins Exch*, 315 Mich App 202, 214; 888 NW2d 916 (2016) (cases from other jurisdictions are not binding, but may be considered for their persuasive value). Indeed, other jurisdictions have reached the opposite conclusion. For example, in *Brewer v Burns*, 222 Ariz 234, 238-239; 213

P3d 671 (2009), the Arizona Supreme Court held that the issue of presentment was justiciable, because, while the Arizona constitution provided that each legislative chamber could set their own rules and procedures, this did not "limit or otherwise qualify the directive" that "every measure when finally passed shall be presented to the Governor." *Id*. at 238 (quotation marks, brackets, and citation omitted). We find *Brewer*'s analysis more persuasive than *Gilbert*'s. While it is true that Const 1963, art 4, § 33, does not provide a specific time frame within which a bill must be presented, the absence of a specific time frame does not undermine the requirement that "[e]very bill passed by the legislature shall be presented to the governor before it becomes law[.]" *Id*.[5]

The second inquiry—whether "resolution of the question [would] demand that a court move beyond areas of judicial expertise," examines "whether there are judicially discoverable and manageable standards for resolving the dispute or whether the dispute is impossible to resolve without an initial policy determination of the kind clearly for nonjudicial discretion." *Pego*, ___ Mich App at ___; slip op at 11 (quotation marks and citation omitted). Defendants contend that the issue in this case necessarily strays beyond judicial expertise because plaintiffs "asked the court to not only interpret the Constitution, but to then order Defendants to immediately present the nine bills to the governor." But the enforcement of a trial court's order is not what the political-question framework considers. The inquiry concerns whether resolving the *question* would require the Court of Claims to stray beyond its area of expertise.[6] The *question* here is whether defendants are required to present the bills to the Governor under Const 1963, art 4, § 33. We agree with the Court of Claims that resolving this question does not require us to stray beyond the judicial expertise of constitutional interpretation.

The third and final inquiry concerns whether "prudential considerations [for maintaining respect between the three branches] counsel against intervention[.]" *Pego*, ___ Mich App at ___; slip op at 11. The Court of Claims recognized that the political nature of this case "urges caution[,]" but this, alone, does not preclude judicial intervention. This is not a situation in which the judiciary is interpreting legislative rules and procedures—such matters inherently fall within the sole discretion of the Legislature. See *LeRoux v Secretary of State*, 465 Mich 594, 609; 640 NW2d 849 (2002) ("The courts do not review claims that actions were taken in violation of a legislative rule."). Nor are we considering the contents of the bills at issue. The question here involves the interpretation of the rules and requirements imposed by our Constitution. The fact that the entity subject to these rules is the Legislature does not change the fact that the *rule* at issue is one imposed by our Constitution—the interpretation of which, absent exceptions not present here, falls to the judiciary. *Bauserman*, 509 Mich at 692. Therefore, this issue is not a nonjusticiable political question.

---

[5] Defendants' argument that Const 1963, art 4, § 33, does not actually require presentment will be addressed below.

[6] Defendants' enforcement-related challenges, while inappropriate for the issue of justiciability, are addressed below.

## V. ARTICLE 4, SECTION 33

Defendants argue that the Court of Claims incorrectly interpreted Const 1963, art 4, § 33, as requiring the Legislature to present all passed bills to the Governor. We disagree.

> When interpreting our Constitution, this Court's primary objective . . . is to realize the intent of the people by whom and for whom the constitution was ratified. Accordingly, we seek to determine the text's original meaning to the ratifiers, the people, at the time of ratification. To do so, we must consider the circumstances leading to the adoption of the provision and the purpose sought to be accomplished. To help discover the common understanding, this Court has observed that constitutional convention debates and the address to the people, though not controlling, are relevant. [*Mothering Justice v Attorney General*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165325); slip op at 11 (quotation marks and citations omitted, ellipses in *Mothering Justice*).]

Const 1963, art 4, § 33, provides, in its entirety:

> Every bill passed by the legislature shall be presented to the governor before it becomes law, and the governor shall have 14 days measured in hours and minutes from the time of presentation in which to consider it. If he approves, he shall within that time sign and file it with the secretary of state and it shall become law. If he does not approve, and the legislature has within that time finally adjourned the session at which the bill was passed, it shall not become law. If he disapproves, and the legislature continues the session at which the bill was passed, he shall return it within such 14-day period with his objections, to the house in which it originated. That house shall enter such objections in full in its journal and reconsider the bill. If two-thirds of the members elected to and serving in that house pass the bill notwithstanding the objections of the governor, it shall be sent with the objections to the other house for reconsideration. The bill shall become law if passed by two-thirds of the members elected to and serving in that house. The vote of each house shall be entered in the journal with the votes and names of the members voting thereon. If any bill is not returned by the governor within such 14-day period, the legislature continuing in session, it shall become law as if he had signed it.

The parties provide different interpretations of what the word "shall" modifies in the first sentence. Plaintiffs contend the word applies to the language that immediately follows: "be presented to the governor[,]" while defendants contend it applies to the final part of the sentence: "before it becomes law[.]" In this respect, plaintiffs contend the mandatory word "shall," see *In re Forfeiture of Bail Bond*, 496 Mich 320, 327; 852 NW2d 747 (2014),[7] in this provision means

---

[7] On appeal, defendants argue that " 'shall' does not always mean 'shall.' " But the support defendants provide for this assertion is a treatise, which is not binding authority. *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 425 n 2; 952 NW2d 576 (2020). By contrast, binding Michigan caselaw has long recognized the mandatory directive of the word

that every bill passed by the Legislature *must* be presented to the Governor. Defendants, on the other hand, argue the opening sentence of Const 1963, art 4, § 33, merely addresses the prerequisite that, before a bill can become law, it must be presented to the Governor for approval. While defendants' interpretation has arguable merit standing alone, excerpts from the official record of the 1961 Constitutional Convention provide insight into the ratifiers' intent at the time the provision was adopted. *Mothering Justice*, ___ Mich at ___; slip op at 11. When discussing the amount of time that the Governor would have to consider each bill, one delegate provided a hypothetical scenario:

> Then the 2 houses have to agree to it in a conference, but it finally is adopted by both houses in a particular form. Then, it being a senate bill, it becomes the *duty* of the secretary of the senate *to print that bill* in the form in which it was finally adopted and it is the *duty* of the secretary of the senate, since it was a senate bill, *to present that bill to the governor*. Sometimes a bill can be speedily printed, sometimes it takes 2 or 3 weeks to get a bill printed, if it's a great big thick bill and there's an awful lot of other bills also to be printed. [1 Official Record, Constitutional Convention 1961, p 1719 (emphasis added).]

The phrasing of this hypothetical indicates an understanding that, after a bill is adopted by both chambers, it becomes the "duty" of the relevant member of the chamber in which the bill originated to present it to the Governor. This understanding supports the interpretation advanced by plaintiffs and adopted by the Court of Claims.[8]

---

"shall." See *In re Forfeiture of Bail Bond*, 496 Mich at 329 (concluding that the Legislature, in changing a statute's language from "may" to "shall," necessarily "intended 'shall' to mean what this Court has held that 'shall' means since at least 1850."). This comports with the most "common understanding" of the word "shall" in Michigan jurisprudence. *Mothering Justice*, ___ Mich at ___; slip op at 11 (quotation marks and citation omitted).

[8] Defendants, quoting *Regents of Univ of Mich v Michigan*, 395 Mich 52, 60; 235 NW2d 1 (1975), contend that "convention colloquies are 'not decisive as to the intent of the general convention (or of the people) in adopting the measures.' " We agree. We fully recognize that the discussions at the Convention "must be placed in perspective[,]" *id*. at 59, and we acknowledge that the discussion on which we focus was predominately concerned with the time in which the Governor would have to consider each bill, 1 Official Record, Constitutional Convention 1961, p 1719. But this does not change our analysis. It is the assumptions inherent in the excerpt from the Constitutional Convention that we find persuasive; the ratifiers believed that the duty of presentment immediately followed (with exceptions for reasonable delays in preparation) the passage of a bill. We acknowledge that the statement of one speaker is an "individual expression[] of concepts as the speaker[] perceive[d] them[.]" *Regents of Univ of Mich*, 395 Mich at 59-60. But, as our Supreme Court recognized, such debates are considerable "in the absence of guidance in the constitutional language . . . ." *Id*. at 60. Const 1963, art 4, § 33, does not indicate any time requirement for the duty of presentment it provides. Nor do we have any evidence of the intent of the people, generally, at the time the provision was enacted. Without such guidance, our consideration of the discussion at the Constitutional Convention is instructive.

Alternatively, defendants argue that, even if Const 1963, art 4, § 33, imposed a duty on the Legislature to present the bills to the Governor, this duty applies only to the session that passed the bills. They contend that any duty of presentment is extinguished once the next legislative session begins. In other words, if a duty of presentment existed, it belonged to the 102nd Legislature, but does not extend to the current, 103rd Legislature. But as the Court of Claims noted, "there is no exception for bills passed by a prior Legislature[]" noted in Const 1963, art 4, § 33. The provision mandates that "[e]very bill passed by the legislature shall be presented to the governor before it becomes law[,]" and, as the Court of Claims correctly reasoned, "[a] bill passed by the 102nd Legislature is one of '[e]very bill passed by the legislature[.]' " Defendants argue that imposing such a duty on them violates the common understanding that "an act of one legislature is not binding on, and does not tie the hands of, future legislatures." *LeRoux*, 465 Mich at 616 (quotation marks and citation omitted). Defendants overstate the rule, however. This rule is grounded in the "fundamental principle that one Legislature cannot bind a future Legislature or limit its power to amend or repeal statutes. Absent the creation of contract rights, the later Legislature is free to amend or repeal existing statutory provisions." *Id*. at 615. Imposing the duty of presentment on the 103rd Legislature for bills passed in the 102nd Legislature does not "limit its power to amend or repeal" the bills later if they are signed by the Governor. *Id*.

Defendants also rely on Const 1963, art 4, § 13, which provides that "[a]ny business, bill, or joint resolution pending at the final adjournment of a regular session held in an odd numbered year shall carry over with the same status to the next regular session." They claim that, while this carryover is expressly noted, there is no carryover provision mentioned for business or bills pending at a final adjournment in an even-numbered year. Therefore, defendants argue, the business or bills of the 102nd Legislature did not carry over to the 103rd Legislature. But, as the Court of Claims correctly explained, this provision concerns *pending* bills, not *passed* bills. *Id*. The provision is silent about passed bills, which are the bills at issue in this case.

Defendants lastly contend that, because there is no time frame or deadline for presentment mentioned in Const 1963, art 4, § 33, there was no evidence that defendants ever actually violated the provision. Defendants argue this "means there is no valid claim or, at the least, that any claim is not ripe." The doctrine of ripeness requires that a party must have suffered an actual injury in order to raise a claim; hypothetical injuries and controversies are insufficient. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017). While it is true that there is no express deadline for presentment provided in the constitutional language, the provision does provide that presentment is the next, mandatory step after a bill is approved by both chambers. We decline to abuse the doctrine of ripeness to override this mandatory directive of our Constitution. Indeed, the discussion at the 1961 Constitutional Convention that "[s]ometimes a bill can be speedily printed, [while] sometimes it takes 2 or 3 weeks to get a bill printed," indicates the ratifiers' understanding that a bill is to be presented to the Governor as soon as it is possible to do so. 1 Official Record, Constitutional Convention 1961, p 1719. There is no dispute that defendants

have failed to present the bills despite being able to do so. Thus, defendants' ripeness argument fails.[9]

In sum, Const 1963, art 4, § 33, clearly imposes the mandatory duty of presentment on the Legislature for "[e]very bill passed by the legislature[.]" This duty is not session-dependent; the Legislature, as a whole, bears the duty of presentment. Additionally, the fact that Const 1963, art 4, § 33, does not provide a deadline for presentment is not dispositive. The discourse at the 1961 Constitutional Convention suggests that presentment is the next, immediate step after a bill is passed by both chambers.

## VI. ENFORCEMENT

The parties take issue with the Court of Claims's decisions regarding all three methods of relief plaintiffs sought. We hold that the Court of Claims erred when it declined to issue a writ of mandamus.[10]

## A. MANDAMUS

"Mandamus is an extraordinary remedy and it will not lie to review or control the exercise of discretion vested in a public official or administrative body." *Higgins Lake*, 341 Mich App at 178 (quotation marks, brackets, and citation omitted).

---

[9] Defendants also argue that the trial court erred by failing to consider their mootness and laches arguments. However, the entirety of their argument on appeal in this respect is that "[t]he Senate's failure to seek relief while the 102nd Legislature was still in session renders their claims either moot or barred by laches. There is simply no requirement for a new legislature to present bills passed by a prior legislature." Aside from this conclusory statement, with which we, as noted, disagree, defendants provide no support for their mootness or laches assertions. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). Defendants' failure to brief the merits of their argument or cite any supporting authority renders their mootness and laches arguments abandoned. *Id*.

[10] Because we conclude that the Court of Claims erred in this respect, we need not address the parties' arguments regarding the court's denial of plaintiffs' request for a permanent injunction or the propriety of the declaratory judgment. Because the writ of mandamus fulfills the purpose of the declaratory judgment, and essentially duplicates the relief plaintiffs seek through injunction, the issues surrounding these other forms of relief are moot. See *Adams v Parole Bd*, 340 Mich App 251, 259; 985 NW2d 881 (2022) ("An issue is . . . moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy.") (Quotation marks and citation omitted). We see no reason to stray from the general rule that "this Court does not address moot questions or declare legal principles that have no practical effect in a case." *Id*. (quotation marks and citation omitted). Thus, we decline to consider the arguments pertaining to the declaratory judgment or plaintiffs' request for a permanent injunction.

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. [*Id*. at 178-179 (quotation marks and citations omitted).]

We conclude that mandamus is the appropriate remedy.

## 1. PRONGS 1 AND 2: CLEAR LEGAL RIGHT AND DUTY

Prongs 1 and 2 are inextricably intertwined in this case. Plaintiffs' clear, legal right to performance exists because plaintiffs and defendants, as a single entity, have a clear legal duty to perform, and defendants have not only failed to perform the duty themselves, but have, by extension, prevented plaintiffs from doing so as well. As explained, Const 1963, art 4, § 33, requires that "[e]very bill passed by the legislature shall be presented to the governor before it becomes law[.]" The provision necessarily implies that the Legislature has the mandatory duty of presentment described—the Legislature passed the bills at issue, and is therefore the only entity that can subsequently present those bills to the Governor. Thus, the clear legal duty of presentment rests with the Legislature as a whole, and plaintiffs have a right to have defendants perform that duty because defendants' actions have rendered plaintiffs unable to perform their duty themselves.

## 2. PRONG 3: MINISTERIAL FUNCTION

"A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id*. at 179 (quotation marks and citation omitted). The Court of Claims concluded that the duty at issue in this case was not ministerial. It reasoned that Const 1963, art 4, § 33, "does not prescribe and define this duty with sufficient precision and certainty as to leave nothing to the Legislature's discretion or judgment[,]" because, while the legislative rules themselves identify the appropriate individual to perform the duty, prudential concerns weighed against the Court of Claims interpreting or enforcing legislative rules. We conclude, however, that the mere fact that the specific *individual* designated to act on behalf of the Legislature is not defined by the constitutional provision imposing the duty does not, in and of itself, render the act ministerial. As our Supreme Court has explained, "the writ will lie to require a body or an officer charged with a duty to take action in the matter, notwithstanding the fact that the execution of that duty may involve some measure of discretion." *Teasel v Dep't of Mental Health*, 419 Mich 390, 410; 355 NW2d 75 (1984). Courts have the authority to issue writs of mandamus against individuals or bodies, and the fact that a writ directed at a body will require discretion as to which individual within that body performs the task is not dispositive. *Id*. See also MCL 600.4411 (mandamus can be "directed to any public officer, body or board, corporation or corporate officer, commanding them to perform any duty . . . .").

The duty at issue here lies squarely with the Legislature. It is the Legislature that passes bills, and it therefore must be the Legislature that presents them to the Governor. The *act* plaintiffs seek to compel through mandamus is the presentment of these bills to the Governor. Our Constitution leaves no room for discretion in the fact that this act "shall" be performed. Const 1963, art 4, § 33. While there is some discretion as to "the execution of [this] duty[,]" this does

-11-

not render the ministerial act of presentment itself discretionary. *Teasel*, 419 Mich at 410. Regardless of what the legislative rules provide, it is beyond dispute that the duty of presentment falls to the Legislature, and that the only chamber of the Legislature capable of presenting these particular bills is the House of Representatives, because the House of Representatives currently possesses them. As such, the ministerial act of presentment must, by the facts of this case, fall on defendants.[11]

### 3. PRONG 4: NO OTHER ADEQUATE REMEDY AT LAW

The Court of Claims reasoned that mandamus was improper because plaintiffs had an adequate remedy at law in the form of its declaratory judgment. But without a mechanism for enforcement, the declaratory judgment does not provide an enforceable remedy for plaintiffs. See *Bauserman*, 509 Mich at 691-692 (citing various authorities for the proposition that "a right must have a remedy[,]" because, "[i]f not, it is not a right at all but only a voluntary obligation that a person can fulfill or not at his whim, or merely a hope or a wish.") (quotation marks and citation omitted). Therefore, any attempted enforcement of the declaratory judgment in this case would effectively be mandamus, because it would necessarily compel defendants to act in accordance with their duty. See, e.g., *Teasel*, 419 Mich at 410. In other words, the declaratory judgment, alone, is insufficient in light of defendants' prolonged refusal to present the bills to the Governor, see, e.g., *Durant v State*, 456 Mich 175, 206; 566 NW2d 272 (1997) (recognizing that declaratory relief "coupled" with another remedy was appropriate considering the "prolonged recalcitrance" by the defendant-governmental entity),[12] but enforced, is actually mandamus, see *Teasel*, 419 Mich at 410.

Defendants argue that the absence of any express enforcement mechanism provided by Const 1963, art 4, § 33, demonstrates that compelled performative relief is inappropriate even if declaratory relief is insufficient. They attempt to distinguish *Durant* by the fact that *Durant* concerned "a constitutional provision that expressly include[d] an 'enforcement' mechanism that is nowhere to be found in Article 4, Section 33." But our Supreme Court already impliedly rejected this argument in *Bauserman* when it noted that "[g]enerally, enforcing constitutional rights through injunctive [i.e., compulsory] relief is uncontroversial, despite the lack of an explicit constitutional authorization for such a cause of action." *Bauserman*, 509 Mich at 699-700, citing *Brown v Bd of*

---

[11] We note that, while not expressly considered by the Court of Claims, defendants also argue presentment under Const 1963, art 4, § 33, is not ministerial because the provision does not provide a time frame for performance. This argument fails for the same reason defendants' ripeness argument fails. The provision's failure to include a deadline does not change the fact that the act must be done. The provision clearly mandates that every passed bill "shall" be presented to the Governor. If the lack of a deadline were to mean the Legislature has unfettered discretion regarding when to do so, and could, therefore, simply choose to never present a bill, the provision would be stripped of its meaning. Defendants' time frame argument is inconsistent with the plain language of the provision as it is written.

[12] We recognize *Durant* concerned injunctive relief, not mandamus, but the underlying reasoning is applicable here. A declaratory judgment, alone, is insufficient to compel defendants' performance given their prolonged refusal to present the bills to the Governor.

-12-

*Ed of Topeka*, 347 US 483, 486 n 1; 74 S Ct 686; 98 L Ed 873 (1954), and *Brown v Bd of Ed of Topeka*, 349 US 294; 75 S Ct 753; 99 L Ed 1083 (1955). The judiciary has the inherent authority to fashion a remedy to rectify a constitutional violation, even if the remedy chosen is not specifically identified in the constitutional provision at issue. *Bauserman*, 509 Mich at 693, 699-700. To hold that a writ of mandamus cannot be entered in the face of a clear violation of a clear constitutional duty simply because the constitutional provision itself does not provide a deadline for performance would render the provision's mandate nothing more than "a voluntary obligation that a person can fulfill or not at his whim, or merely a hope or a wish." *Id*. at 691.

## B.  SEPARATION OF POWERS

While not phrased explicitly, we recognize that defendants raise separation-of-powers concerns with respect to the judiciary compelling legislative action in this case. But, again, our Supreme Court has explained that "[t]he recognition and redress of constitutional violations are quintessentially judicial functions, required of us by the Separation of Powers Clause." *Bauserman*, 509 Mich at 687, citing Const 1963, art 3, § 2. It explained:

> The judiciary has the legitimate authority, in the exercise of the well-established duty of judicial review, to evaluate governmental action to determine if it is consistent with the Constitution. This is a first principle, inherent in our tripartite separation of powers. A major function of the judiciary is to guarantee the rights promised in our Constitution. If the rights guaranteed in our Constitution are to be more than words on paper, then they must be enforceable. And if the rights guaranteed in our Constitution are to be enforceable, then enforcement must fall to us, absent an explicit constitutional provision limiting our authority in this regard. [*Bauserman*, 509 Mich at 693 (quotation marks, brackets, and citations omitted).]

As discussed earlier, Const 1963, art 4, § 33, contains no language limiting the judiciary's authority to interpret and enforce its mandates.[13] Absent any such limitations, interpretation and enforcement of this constitutional provision, even in the context of governmental action, falls squarely within the scope of judicial authority.[14]

---

[13] The *Bauserman* Court listed two exceptions to judicial interpretive authority: (1) when the provision itself allocates authority to a different branch, or (2) when the Legislature has undertaken the task of providing the remedy itself, and the judiciary deems that remedy adequate. *Bauserman*, 509 Mich at 705. The second exception exists because the courts are "not required to duplicate the effort[]" of the Legislature in providing the remedy. *Id*. The second exception is inapplicable here, because there is no dispute that the Legislature has not "provided an adequate mechanism" to remedy this situation. *Id*.

[14] Defendants argue that any remedy in this case is not for the judiciary to impose; that this is a matter concerning a legislative process that must be resolved by the Legislature. As we have explained, while this situation does concern legislative behavior, the *rule* that must be enforced is found in our Constitution. Thus, absent any limitations, enforcement of this rule falls to the

We conclude that the Court of Claims erred in denying plaintiffs' request for a writ of mandamus. As such, we reverse and remand to the Court of Claims for issuance of a writ of mandamus ordering defendants to present the bills to the Governor. Because enforcement is required, but the provision does not indicate a specific time frame, the deadline for presentment may be determined in the Court of Claims's discretion. See *Band v Livonia Assoc*, 176 Mich App 95, 105; 439 NW2d 285 (1989) ("A court has the basic responsibility of enforcing its own orders and has considerable discretion in choosing the means to be employed."). We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Daniel S. Korobkin

---

judiciary. *Bauserman*, 509 Mich at 693. Furthermore, the requirement that rights must have remedies, *id.* at 691-692, would be violated if resolution were left to the Legislature, because, as plaintiffs have explained, the Legislature's inability to come to an agreement is what led to this case in the first place.